**WARREN COUNTY HUMAN
SERVICES, Petitioner**

v.

**STATE CIVIL SERVICE COMMIS-
SION (ROBERTS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 27, 2003.

Decided March 8, 2004.

Mary C. Barkman, Pittsburgh, for petitioner.

No appearance entered on behalf of respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.[1]

Warren County Human Services (Warren County) appeals from an order of the State Civil Service Commission (Commission) granting Edward Roberts' (Roberts) challenge to his removal as a caseworker because of a 1980 conviction for aggravated assault in violation of the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301–6385.

On January 2, 2001, Roberts was hired by Forest/Warren Department of Human Services (Department) as a caseworker. As a condition of his employment, he submitted a copy of his Pennsylvania State Police Criminal History, which indicated, as he had also disclosed during the interview process, that he had pled guilty to the felony of aggravated assault, 18 Pa.C.S. § 2702(a), in 1980. Roberts worked for the Department until it ceased to exist on December 31, 2001. Thereafter, the Department reorganized into three separate entities: Warren County, the Forest County Children and Youth (Forest County), and the Northwest Human Development.

When Warren County began rehiring to fill its vacancies, Roberts was offered a caseworker position which he accepted on April 29, 2002. As a condition of his rehiring, Roberts was informed that he needed to submit to new clearances, including a criminal history, as required by the CPSL. After Roberts submitted his criminal history to Warren County, he applied for a transfer to Forest County. When the administrator for Forest County learned of Roberts' conviction for aggravated assault, he determined that hiring Roberts would be a violation of Section 6344(c)(2) of the CPSL, 23 Pa.C.S. § 6344(c)(2).[2]

The administrator of Forest County contacted Warren County and informed it of Roberts' preclusion from employment under the CPSL. As a result, Warren County concluded that its initial hiring of Roberts in 2001 and its rehiring of him in April 2002 was in violation of the CPSL. It was only then that Warren County realized

---

1. This opinion was reassigned to the author on January 15, 2004.

2. Section 6344 provides, in relevant part:

**Information relating to prospective child-care personnel**

(a) **Applicability.**—This section applies to all prospective employees of child-care services, prospective foster parents, prospective adoptive parents, prospective self-employed family day-care providers and other persons seeking to provide child-care services under contract with a child-care facility or program.

✻ ✻ ✻

(c) **Grounds for denying employment.**—

✻ ✻ ✻

(2) In no case shall an administrator hire an applicant if the applicant's criminal history record information indicates the applicant has been convicted of one or more of the following offenses under Title 18 (relating to crimes and offenses) or an equivalent crime under Federal law or the law of another state:

✻ ✻ ✻

Section 2702 (relating to aggravated assault).

Section 6344(c) also bars the hiring of individuals to a position with direct child contact who has ever been convicted of, *inter alia,* kidnapping, robbery, indecent assault, sexual assault and prostitution, or if they have been listed in the central register as the perpetrator of child abuse or convicted of a felony related to drugs in the last five years.

that the CPSL had been amended in 1994, and that it had been applying the pre-amendment version of the CPSL. Prior to the 1994 amendments, the CPSL had contained a bar to employment if an applicant had committed one of the enumerated crimes, including aggravated assault, within five years prior to applying for a position with direct child contact. The 1994 amendment eliminated the five-year ban, thereby completely preventing anyone from applying for a position with direct child contact if they had previously been convicted of aggravated assault. Because of his aggravated assault conviction, Warren County terminated Roberts on June 20, 2002.

Roberts appealed his removal to the Commission alleging, *inter alia,* that Warren County did not have just cause to remove him as a caseworker based upon a 1980 conviction for aggravated assault.[3] At the hearing, Warren County acknowledged that the decision to terminate Roberts was based solely on the

CPSL's prohibition of hiring anyone with a prior conviction of aggravated assault and not based on his performance as a caseworker.[4] Based upon this Court's holding in *Nixon v. Department of Public Welfare (Nixon I),* 789 A.2d 376 (Pa. Cmwlth.2001), *affirmed (Nixon II),* 576 Pa. 385, 839 A.2d 277 (2003),[5] the Commission declined to apply the life-time criminal history ban in Section 6344(c) of the CPSL because it found that it violated Article I, Section 1 of the Pennsylvania Constitution by providing "a *per se* life-time prohibition to employment without considering the individual's present or past ability . . . to perform the duties of the position." (Commission's January 24, 2003 Decision at 11.) Because Warren County's removal of Roberts was based solely on the CPSL, the Commission reversed Warren County's decision to terminate Roberts for failing to present evidence establishing just cause for Roberts' removal.[6] This appeal by Warren County followed.[7]

3. Section 807 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.807, provides that: "No regular employe in the classified service shall be removed except for just cause."

4. In fact, Susan Kern, Warren County's Personnel Analyst, testified that she did not know of any concerns about the quality of Roberts' work during either period of employment. She also stated that Warren County was "doing everything in [its] power to try to keep him employed," and "he was one of the best caseworkers and [it] really did not want to lose him." (Reproduced Record at 18a.)

5. In *Nixon I,* we found that the criminal records provisions in the Older Adults Protective Services Act (OAPSA), Act of November 6, 1987, P.L. 381, *as amended, added by* Section 5 of the Act of December 18, 1996, P.L. 1125, 35 P.S. 10225.501–10225.508, prohibiting the hiring of individuals in the elder care field who had been convicted at any time of certain enumerated crimes, was unconstitutional be-

cause no rational relationship existed between a lifetime prohibition from employment in elder care and a legitimate governmental purpose.

The Supreme Court affirmed *Nixon I,* holding that it violated the Equal Protection Clause because the OAPSA only banned potential employees and not existing employees who had been convicted of an enumerated crime.

6. Section 807 of the Civil Service Act, see fn. 3, *as amended,* 71 P.S. § 741.807, prohibits the removal of an employee in the classified service "except for just cause."

7. In reviewing a Commission decision where there is a complete record, our standard of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are unsupported by substantial evidence. 2 Pa.C.S. § 704; *Department of Health v. Nwogwugwu,* 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991).

In its appeal, Warren County contends that the Commission erred in finding that Section 6344(c) of the CPSL violates the Pennsylvania Constitution and in concluding that Warren County failed to present evidence establishing just cause for the removal of Roberts. Article I, Section 1 of the Pennsylvania Constitution provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

"The Supreme Court has consistently interpreted Article I, Section 1, as guaranteeing an individual's right to engage in any of the common occupations of life." *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631, 635 (1980), citing *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973),[8] *certiorari denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *State Board of Pharmacy v. Pastor*, 441 Pa. 186, 272 A.2d 487 (1971); and *Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634 (1954). The right to engage in a particular occupation is an important right but not a fundamental right and, therefore, is subject to the rational basis test, i.e., a state may not deprive an individual of that right unless it can be shown that such deprivation is reasonably related to the state interest that is sought to be protected. *Gambone; Secretary of Revenue v. John's Vending Corporation*, 453 Pa. 488, 309 A.2d 358 (1973); *Nixon II*.

In *Nixon II*, recently decided by our Supreme Court, Earl Nixon, Reginald Curry, Kelly Williams, Marie Martin and Theodore Sharp (Employees) challenged the OAPSA as unconstitutional because it required new applicants and existing employees who had been at a covered facility for less than a year to submit criminal record reports. Because of prior convictions, the Employees were either terminated from their current positions or denied a position. The Supreme Court held that the OAPSA violated equal protection because it banned potential employees convicted of an enumerated crime, but did not ban existing employees who had been similarly convicted. In finding that the OAPSA did not satisfy the rational basis test, the Court explained:

Here, it is clear that no such real and substantial relationship exists. If the goal of the criminal records chapter is, as the Commonwealth Parties allege, to protect the Commonwealth's vulnerable citizens from those deemed incapable of safely providing for them, there was simply no basis to distinguish caretakers with convictions who had been fortunate enough to hold a single job since July 1, 1997, i.e., a year before the effective date of the chapter, from those who may have successfully worked in the industry for more than a year but had not held one continuous job in a covered facility since July 1, 1997.

8. In *Adler*, the Supreme Court emphasized that the right to engage in common occupations may not be interfered with by legislation that is without reasonable relation to some purpose within the competency of the Commonwealth to effect, stating:

A law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.
*Adler*, 453 Pa. at 72, 311 A.2d at 640.

The only conceivable explanation for the distinction between individuals who had completed a one year tenure in a covered facility and those who had previously had successful tenures in covered facilities, but had not been at one facility since July 1, 1997, is that the General Assembly determined that those persons convicted of the disqualifying crimes who had been working at a covered facility for more than a year presented less of a risk because they had proven that they were not likely to harm the patient population and had established a degree of trust with their patients and management. However, if convicted criminals who had been working at a covered facility for more than a year as of July 1, 1998, were capable of essentially rehabilitating themselves so as to qualify them to continue working in a covered facility, there should be no reason why other convicted criminals were not, and are not, also capable of doing the same. In fact, according to the factual backgrounds provided by the Employees, many of the Employees worked successfully in covered facilities for years. Similarly, almost all of them gained the trust of their former supervisors at the covered facilities where they worked, as is apparent by the fact that their supervisors submitted declarations in which they averred that they would rehire the Employees if they could under the OAP-SA. Thus, it would seem that these Employees, like those convicted criminals who had worked at a covered facility for more than a year as of July 1, 1998, have essentially rehabilitated themselves and should be able to continue working in covered facilities.

*Nixon II,* 576 Pa. at 403–04, 839 A.2d at 289. Likewise, here, the CPSL fails to satisfy the rational basis test. Section 6344(c) prohibits the hiring of applicants previously convicted of certain enumerated crimes; however, it does not ban existing employees from continuing to work in the child-care field, despite having a similar conviction.

■ In addition, we also hold that the CPSL's lifetime ban of previously convicted applicants from employment in child-care is unconstitutional. Such a ban "runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders." *John's Vending,* 453 Pa. at 494–495, 309 A.2d at 362. "To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult road of rehabilitation." *Id.; see also* Justice Cappy's and Justice Castille's concurring opinions in *Nixon II.* Here, Warren County has failed to present any rational reason between the classification imposed upon Roberts and a legitimate governmental purpose. To the contrary, it has even admitted that but for Section 6344 of the CPSL, Roberts would not have been removed from his position as his work was exemplary—demonstrating that his remote conviction does not reflect upon his present abilities to perform the duties of a caseworker. *See* supra fn. 4. Because Section 6344(c), as it relates to aggravated assault, creates limitations that have no temporal proximity to the time of hiring, it does not bear a real and substantial relationship to the Commonwealth's interest in protecting children and is unconstitutional.[9]

Commonwealth could demonstrate that certain crimes, regardless of when they are com-

Because Warren County's removal of Roberts was based solely on Section 6344(c) of the CPSL, it failed to present any evidence establishing just cause for his removal.

Accordingly, the order of the Commission is affirmed.

### ORDER

AND NOW, this 8th day of March, 2004, the order of the State Civil Service Commission, No. 22814, dated January 24, 2003, is affirmed.

### DISSENTING OPINION BY Judge COHN.

Respectfully, I dissent from the majority opinion.

I believe that this case is distinguishable from *Nixon*, and find significant differences between the Child Protective Services Law (CPSL) as compared to the Older Adults Protective Services Act (OAPSA), such that the criminal records provision of the CPSL is not, in my view, constitutionally infirm.

In *Nixon v. Commonwealth of Pennsylvania*, 576 Pa. 385, 839 A.2d 277 (2003), our Pennsylvania Supreme Court articulated the appropriate inquiry for examining the constitutionality of a criminal records provision that has the impact of limiting employment opportunities. Statutory provisions are "presumed to be constitutional and may only be found to be unconstitutional if the party challenging the law can prove that it 'clearly, palpably, and plainly'

violates the Constitution." *Nixon*, 576 Pa. at 398, 839 A.2d at 286. In evaluating a statutory provision, the reviewing court:

may not question the propriety of the public policies adopted by the General Assembly for the law, but rather is limited to examining the connection between those policies and the law. *See Finucane v. Pennsylvania Milk Marketing Bd.*, 136 Pa.Cmwlth. 272, 582 A.2d 1152, 1154 (1990); *see also Parker v. Children's Hosp. of Phila.*, 483 Pa. 106, 394 A.2d 932, 937 (1978) ("the power of judicial review must not be used as a means by which the courts might substitute [their] judgment as to the public policy for that of the legislature").

*Id.* In reviewing laws which do not impede a fundamental right, Pennsylvania courts are to apply "a rational basis test." *Id.* at 400, 839 A.2d at 287. This test has been defined to mean that "a law 'must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained.'" *Id.* at 400-01, 839 A.2d at 287–88 (quoting *Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634, 637 (1954)).

In conducting this inquiry into the criminal records provision of the OAPSA, the Supreme Court noted that:

There is no question that protecting the elderly, disabled, and infirm from being victimized is an important interest in this Commonwealth and that the General Assembly may enact laws that restrict who may work with these individuals.

---

mitted, create an ongoing danger to certain categories of the population, and, in that case, a provision prohibiting the offender from employment in direct contact with that "protected class" may be rationally related to a legitimate state interest. At a minimum, the CPSL should be fine-tuned to provide for specific

time limitations for each crime depending on its egregiousness. However, in this case, no sufficient reason has been provided to explain why the crime of aggravated assault, committed over 20 years ago, continues to warrant the harsh result of a complete ban from employment with direct child contact.

*Nixon,* 576 Pa. at 402, 839 A.2d at 288. However, the Court found the OAPSA criminal records provision to be constitutionally infirm because it distinguished persons already employed at elder care facilities from those seeking employment, precluding the hiring of the latter and doing nothing to the former. The Court noted that there was no "real and substantial relationship" differentiating between these two groups, if the object to be attained was the protection of the elderly. *Id.* at 403, 839 A.2d at 289. Accordingly, the Court struck the criminal records provision of the OAPSA as unconstitutional.

Nevertheless, as noted above, although the specific statutory language of the OAPSA did not pass the rational basis test, the Court left open the possibility that the legislature's "barring certain convicted criminals from working with [elderly] citizens may be an effective means of protecting such citizens from abuse and exploitation" provided that the basis for doing so passed the rational basis test. *Id.* at 402, 839 A.2d at 288; *accord Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631, 638 (1980) (noting that "Public employers are not always precluded from considering a job applicant's prior convictions in making hiring decisions," and suggesting that convicted arsonists could be precluded from employment as firemen and convicted felons could be precluded from employment as police officers because of the significant governmental interest protected and the relationship of the crimes to the furtherance of that interest).

The CPSL was enacted to protect and assist children, particularly those "most at risk." The General Assembly stated:

> [t]he purpose of this chapter [is] . . . to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately *to meet the needs* of the family and *child who may be at risk* and to prioritize the response and services to children *most at risk.*

23 Pa.C.S. § 6302(b) (emphasis added). There is no doubt that the governmental interest in ensuring this goal is significant. Further, the CPSL's provisions are narrowly tailored. They apply to child-care workers who have direct control and supervision of children, including employees of child-care services, foster parents, adoptive parents, self-employed family day-care providers and others who provide child-care services under a contract with a child-care facility or program. 23 Pa.C.S. § 6344(a). The law's careful drafting evidences the legislature's recognition that children are vulnerable, particularly where unfortunate circumstances have required the intervention, assistance, and care of the children by the government. Further, unlike in the OAPSA amendments in *Nixon,* in the CPSL, the General Assembly has carefully chosen, as impediments to employment, those crimes that society has become increasingly cognizant of being perpetrated against children. These are crimes that often elude detection for some time, specifically, violent crimes,[1] sexually related crimes,[2] kidnapping and related crimes,[3] and general crimes against child

---

1. These crimes include homicide, aggravated assault, and rape. 23 Pa.C.S. § 6344(c)(2).

2. These crimes include rape, sexual assault, incest, indecent exposure, and prostitution. 23 Pa.C.S. § 6344(c)(2).

3. These crimes include kidnapping and unlawful restraint. 23 Pa.C.S. § 6344(c)(2).

welfare.[4] Permanently precluding individuals convicted of these specific crimes from having direct control and supervision over children is, therefore, rational and advances the policy of protecting all children, particularly "at risk" children, from the abusive and criminal conduct of adults.[5]

Furthermore, consideration of these statutory provisions and constitutional concerns is not complete without also considering the constitutionally mandated procedure afforded individuals to remove a conviction from *in futuro* consideration. Pursuant to the Pennsylvania Constitution, the Board of Pardons affords individuals convicted of any crime the opportunity to have that conviction removed, thereby allowing them the chance to pursue employment that the conviction might otherwise have precluded. *See* Pa. Constitution, Article IV, § 9 (discussing the powers of the Board of Pardons). Thus, persons, such as Roberts, have a constitutionally provided mechanism through which to seek relief from the limitations on their Constitutional right to pursue meaningful employment.[6]

In summary, although it cannot be gainsaid that the Pennsylvania Constitution guarantees individuals the right to engage in any of the "common occupations of life," the legislature may reasonably regulate certain positions in the interest of protecting the health, safety, welfare and morals of the citizens of the Commonwealth. *See, e.g., Pennsylvania Medical Society v. Foster,* 147 Pa.Cmwlth. 528, 608 A.2d 633, 637 (1992) (the right to engage in the common occupations of life is "subject to the lawful exercise of the state's police power to protect the public health, safety, welfare and morals by promulgating statutes which reasonably regulate occupations."). The limitations imposed by the CPSL are well crafted, rational and serve to protect the health, safety, welfare and morals of the citizens of the Commonwealth in accordance with *Foster.*[7]

For these reasons, I would reverse.

---

4. These crimes include dealing in infant children, corruption of minors, and endangering the welfare of children. 23 Pa.C.S. § 6344(c)(2).

5. Additionally, the CPSL differentiates between types of offenses, providing, as noted above, a permanent ban on persons convicted of crimes related to the mental and physical well being of children, and imposing a proportionate preclusion period of only five years for crimes not directly bearing on the physical or mental well being of children, specifically, for felony convictions arising under the Controlled Substance, Drug, Device and Cosmetic Act. *See* 23 Pa.C.S. § 6344.

6. *Cf. Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980). In *Hunter,* the Superior Court concluded that an applicant for a bus driving position could not be denied employment on the basis of an aggravated assault conviction for which he had been subsequently **pardoned.** Unlike Hunter, who was pardoned from his aggravated assault conviction, here, Roberts has not pursued this constitutionally established remedy.

7. Application of the majority's analysis in *Nixon* to the facts of this case suggests that the CPSL is constitutionally infirm because, like the OAPSA discussed in *Nixon,* the CPSL differentiates between persons already employed and those seeking employment. However, in my view, Justice Eakin, in his dissenting opinion in *Nixon,* presents a compelling analysis that I find more persuasive.

He stated:
Just because the General Assembly has not subjected some tenured workers to summary termination does not mean the restrictive hiring mechanism now in place has no relation to fulfilling the General Assembly's objective. In actuality, and as ref-

erenced by the majority, this legislation will certainly detect and reduce the number of potentially dangerous staff members working with [the protected group]. Erecting a hiring roadblock to the inflow of proven criminal offenders is not unconstitutional simply because others already beyond the roadblock were not forced out. Eventually this legislation will eliminate those with convictions for the enumerated offenses from working in any covered institution. Wisdom often comes late, to court and legislature alike, and the failure to enact it when petitioners were hired does not make it less wise. This legislation is a rational means to a rational end.

*Nixon,* 576 Pa. at 411, 839 A.2d at 294 (Eakin, J.) (dissenting).