IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyrone Peake, Joan Grey, Charles Ford, : 
Desmond Lowe, Rudolph Jainlett, and : 
Resources For Human Development, : 
Inc., : 
          Petitioners : 
           : 
          v. : No. 216 M.D. 2015
           : Argued: September 16, 2015
The Commonwealth of Pennsylvania, : 
Department of Human Services of the : 
Commonwealth of Pennsylvania, : 
Department of Aging of the : 
Commonwealth of Pennsylvania, and : 
Department of Health of the : 
Commonwealth of Pennsylvania, : 
          Respondents : 


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE LEAVITT                    FILED: December 30, 2015

      Tyrone Peake, Joan Grey, Charles Ford, Desmond Lowe, Rudolph Jainlett, and Resources For Human Development, Inc., have filed a petition for review in this Court's original jurisdiction seeking declaratory and injunctive relief. The petition lodges a constitutional challenge to a provision in the Older

Adults Protective Services Act[1] (Act) that prohibits persons with even one conviction of a list of enumerated crimes to be employed in the care of older adults. Petitioners have moved for summary relief. The Commonwealth, by the Departments of Aging, Human Services and Health, has moved to dismiss the petition for review. Because we conclude that the Act's lifetime employment ban is unconstitutional on its face, we grant summary relief to Petitioners.

## Background

In 1987, the General Assembly, recognizing that Pennsylvania's older adults require protection from exploitation, neglect and abuse, enacted the Act, which states, in relevant part, as follows:

> It is the intent of the General Assembly to provide for the detection and reduction, correction or elimination of abuse, neglect, exploitation and abandonment, and to establish a program of protective services for older adults in need of them.

Section 102 of the Act, 35 P.S. §10225.102. To that end, the Act established a network of agencies in the Commonwealth to provide protective services for older adults, including those who reside in long-term care nursing facilities, receive services in their own homes or attend older adult daily living centers. Section 103 of the Act, 35 P.S. §10225.103.[2]

---

[1] Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §§10225.101-10225.5102.

[2] Section 103 defines a "Facility" as

> Any of the following:
>
> (1)  A domiciliary care home as defined in section 2202-A of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.
>
> (2)  A home health care agency.

**(Footnote continued on the next page . . .)**

2

In December 1996, the General Assembly amended the Act to add Chapter 5 entitled "Criminal History for Employees."[3] 35 P.S. §§10225.501-508. Chapter 5 required all applicants seeking employment in a facility covered by the Act, as well as employees who had been employed in an Act-covered facility for less than two years, to submit to a criminal history records check. 35 P.S. §§10225.502, 10225.508.[4] Section 502 states, in relevant part, as follows:

> (a) General rule.—Facility shall require all applicants to submit with their applications, and shall require all administrators and any operators who have or may have direct contact with a recipient to submit, the following information obtained within the preceding one-year period:
>
>> (1) Pursuant to 18 Pa.C.S. Ch. 91 (relating to criminal history record information), a report of

---

**(continued . . .)**

> (3) A long-term care nursing facility as defined in section 802.1 of the act of July 19, 1979 (P.L. 130, No. 48), known as the Health Care Facilities Act.
>
> (4) An older adult daily living center as defined in section 2 of the act of July 11, 1990 (P.L. 499, No. 118), known as the Older Adult Daily Living Centers Licensing Act.
>
> (5) A personal care home as defined in section 1001 of the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code.

35 P.S. §10225.103.

[3] Chapter 5 was added by the Act of December 18, 1996, P.L. 1125, No. 169, §5, effective July 1, 1998 (Chapter 5).

[4] In 1996, Section 508 of the Act stated, in relevant part, as follows:

This chapter shall apply as follows:

> (1) An individual who on the effective date of this chapter has continuously for a period of two years been an employee of the same facility shall be exempt from section 502 as a condition of continued employment.

*Former* Section 508(1), 35 P.S. §10225.508(1).

3

criminal history record information from the State Police or a statement from the State Police that their central repository contains no such information relating to that person. The criminal history record information shall be limited to that which is disseminated pursuant to 18 Pa.C.S. §9121(b)(2) (relating to general regulations).

(2) Where the applicant is not and for the two years immediately preceding the date of application has not been a resident of this Commonwealth, administration shall require the applicant to submit with the application for employment a report of Federal criminal history record information pursuant to the Federal Bureau of Investigation's appropriation under the Departments of State, Justice, and Commerce, the Judiciary, and Related Agencies Appropriation Act, 1973 (Public Law 92-544, 86 Stat. 1109).

35 P.S. §10225.502(a)(1), (2).

The 1996 amendments established two categories of past criminal convictions: (1) those criminal convictions that disqualified an individual from obtaining or continuing employment regardless of the date of the conviction, and (2) those criminal convictions that disqualified an individual where the conviction had occurred within the past ten years. Section 503 of the Act, 35 P.S. §10225.503, amended June 9, 1997.[5] The first category included murder, rape and

---

[5] *Former* Section 503 of the Act stated as follows:

Grounds for denying employment.

(a) General rule. – In no case shall a facility hire an applicant or retain an employee required to submit information pursuant to section 502(a) if the applicant's or employee's criminal history record information indicates the applicant or employee has been convicted under one or more provisions of 18 Pa. C.S. (relating to crimes and offenses):

Section 2502(a) or (b) (relating to murder).

**(Footnote continued on the next page . . .)**

4

**(continued . . .)**

Section 3121 (relating to rape).

Section 3122.1 (relating to statutory sexual assault).

Section 3123 (relating to involuntary deviate sexual intercourse).

Section 3124.1 (relating to sexual assault).

Section 3125 (relating to aggravated indecent assault).

Section 3126 (relating to indecent assault).

Section 4302 (relating to incest).

Section 6312 (relating to sexual abuse of children).

(b)   Other offenses. – In no case may a facility hire an applicant or retain an employee required to submit information pursuant to section 502(a) if the applicant's or employee's criminal history record information indicates the applicant or employee has been convicted within ten years immediately preceding the date of the report of one or more of the following offenses:

(1)   An offense designated as a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

(2)   An offense under one or more of the following provisions of 18 Pa. C.S.:

Chapter 25 (relating to criminal homicide) except for section 2502(a) and (b).

Section 2702 (relating to aggravated assault).

Section 2901 (relating to kidnapping).

Section 2902 (relating to unlawful restraint).

Section 3301 (relating to arson and related offenses).

Section 3502 (relating to burglary).

Section 3701 (relating to robbery).

A felony offense under Chapter 39 (relating to theft and related offenses) or two or more misdemeanors under Chapter 39.

Section 4101 (relating to forgery).

**(Footnote continued on the next page . . .)**

sexual assault. *Id.* A conviction of a category one offense imposed a lifetime ban on, or immediate discharge from, employment in an Act-covered facility. The second category of crimes included, *inter alia*, felony drug violations; aggravated assault; kidnapping; arson; robbery; and felony or misdemeanor theft offenses. Section 503(b) of the Act, 35 P.S. §10225.503(b). A conviction of a category two criminal offense imposed an employment ban for a period of ten years.

In June 1997, before the effective date of Sections 502 and 503, the General Assembly amended Chapter 5 to expand the employment ban.[6] Specifically, the 1997 amendment provided as follows:

---

**(continued . . .)**

> Section 4304 (relating to endangering welfare of children).
>
> Section 4305 (relating to dealing in infant children).
>
> Section 4953 (relating to retaliation against witness or victim).
>
> A felony offense under section 5902(b) (relating to prostitution and related offenses).
>
> Section 5903(c) or (d) (relating to obscene and other sexual materials and performances).
>
> Section 6301 (relating to corruption of minors).
>
> (3) A Federal or out-of-State offense similar in nature to those crimes listed in paragraphs (1) and (2).
>
> (c) Immunity. – An administrator or a facility shall not be held civilly liable for any action directly related to good faith compliance with this section.

*Former* 35 P.S. §10225.503.

[6] Act of June 9, 1997, P.L. 160, No. 13, §2, effective in 180 days.

(a)  General rule.—*In no case shall a facility hire an applicant or retain an employee* required to submit information pursuant to section 502(a) *if the applicant's or employee's criminal history record information indicates the applicant or employee has been convicted of any of the following offenses*:

(1)  An offense designated as a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

(2)  An offense under one or more of the following provisions of 18 Pa.C.S. (relating to crimes and offenses):

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 2901 (relating to kidnapping).

Section 2902 (relating to unlawful restraint).

Section 3121 (relating to rape).

Section 3122.1 (relating to statutory sexual assault).

Section 3123 (relating to involuntary deviate sexual intercourse).

Section 3124.1 (relating to sexual assault).

Section 3125 (relating to aggravated indecent assault).

Section 3126 (relating to indecent assault).

Section 3127 (relating to indecent exposure).

Section 3301 (relating to arson and related offenses).

Section 3502 (relating to burglary).

Section 3701 (relating to robbery).

A felony offense under Chapter 39 (relating to theft and related offenses) or two or more misdemeanors under Chapter 39.

Section 4101 (relating to forgery).

Section 4114 (relating to securing execution of documents by deception).

Section 4302 (relating to incest).

Section 4303 (relating to concealing death of child).

Section 4304 (relating to endangering welfare of children).

Section 4305 (relating to dealing in infant children).

Section 4952 (relating to intimidation of witnesses or victims).

Section 4953 (relating to retaliation against witness or victim).

A felony offense under section 5902(b) (relating to prostitution and related offenses).

Section 5903(c) or (d) (relating to obscene and other sexual materials and performances).

Section 6301 (relating to corruption of minors).

8

Section 6312 (relating to sexual abuse of children).

(3) A Federal or out-of-State offense similar in nature to those crimes listed in paragraphs (1) and (2).

(b) Deleted.

(c) Immunity.—An administrator or a facility shall not be held civilly liable for any action directly related to good faith compliance with this section.

35 P.S. §10225.503 (emphasis added). The 1997 amendment effected the current version of the Act, which is the subject of the instant petition for review.

The 1997 amendment also revised the scope of the ban. It now required all applicants and employees, who had been working at an Act-covered facility for less than one year before the effective date of Chapter 5, *i.e.*, July 1, 1998, to submit a criminal history record report. Section 508(1) of the Act, 35 P.S. §10225.508(1).[7] Where the report disclosed a disqualifying conviction, the facility was required to discharge an employee who had less than one year of employment as of July 1, 1998. The facility was not required to discharge an employee with

---

[7] Section 508 of the Act states, in relevant part, as follows:

This chapter shall apply as follows:

(1) An individual who, on the effective date of this chapter, has continuously for a period of one year been an employee of the same facility shall be exempt from section 502 as a condition of continued employment.

***

(3) If an employee who is exempt under paragraph (1) seeks employment with a different facility, the employee and the facility shall comply with section 502.

35 P.S. §10225.508(1), (3).

more than one year of employment, but that person was banned from being hired by another facility. 35 P.S. §10225.508(3). A facility that fails to comply with the requirements in Chapter 5 faces civil and criminal penalties. Section 505 of the Act, 35 P.S. §10225.505.

The Act's employment ban prompted a constitutional challenge. *See Nixon v. Commonwealth*, 789 A.2d 376 (Pa. Cmwlth. 2001) (*Nixon I*). The petitioners in *Nixon* had been convicted of one of the enumerated types of criminal offenses that would not have been disqualifying under the pre-1997 version of the Act.[8] However, the 1997 amendments permanently barred them from employment in an Act-covered facility. The petitioners argued that the Act violated their due process rights by arbitrarily infringing on their right to pursue a lawful occupation. Noting that the Commonwealth had stipulated that each of the named petitioners "would make excellent care workers for older Pennsylvanians," this Court held that the criminal history provisions of the Act were "arbitrary and irrational" and that "no rational relationship exists between the classification imposed upon Petitioners and a legitimate governmental purpose." *Id*. at 382. Accordingly, we declared that the criminal history provisions of the Act were unconstitutional as applied to the individual petitioners in that case.

The Pennsylvania Supreme Court affirmed for a different reason. *See Nixon v. Commonwealth*, 839 A.2d 277 (Pa. 2003) (*Nixon II*). The Supreme Court recognized that an employment ban may be desirable in some circumstances, explaining:

> There is no question that protecting the elderly, disabled, and infirm from being victimized is an important interest in this

---

[8] As in the instant case, Resources for Human Development, Inc. was also one of the petitioners.

10

> Commonwealth and that the General Assembly may enact laws that restrict who may work with these individuals. Further, barring certain convicted criminals from working with these citizens may be an effective means of protecting such citizens from abuse and exploitation.

*Nixon II*, 839 A.2d at 288. However, the Court found the Act's employment ban was not rationally related to the Commonwealth's legitimate interest in protecting elderly citizens because the immediate effect of the statute was to prohibit the employment of those employed less than a year before the effective date of Chapter 5 while permitting

> innumerable individuals with disqualifying criminal records to continue working with the purportedly protected [older adult] population solely because they had maintained a job in a covered facility for the year preceding the effective date of the chapter.

*Id*. at 289.[9] The Supreme Court concluded that there was no rational basis for treating the latter group as capable of rehabilitating themselves and the former group as not capable of rehabilitation. *Id*. Accordingly, it held that Chapter 5

> does not bear a real and substantial relationship to the Commonwealth's interest in protecting the elderly, disabled, and infirm from victimization, and therefore unconstitutionally infringes on the [petitioners'] right to pursue an occupation.

*Id*. at 290. The Court ordered that the individual petitioners be able "to seek employment in a covered facility." *Id*.

---

[9] The Supreme Court noted that because the Act's "criminal records chapter [did] not create an absolute bar on the employment of convicted criminals" who were grandfathered into their employment, the Court did not need to address the issue of whether such a bar would be constitutionally permissible. *Nixon II*, 839 A.2d at 288.

11

In response to *Nixon II*, the Department of Aging adopted an "Interim Policy," based on the premise that "legislative action in the near future" would take place. Petition for Review, ¶4. The Department announced that until the enactment of this anticipated legislation, Act-covered facilities would be expected to comply with the Department's Policy, not Chapter 5. *Id.* The Interim Policy provides that a person with a disqualifying criminal record can become eligible for employment by working five years in dependent-care work after the conviction or release from prison, whichever occurs later. *Id.* Further, the Interim Policy permits Act-covered facilities to make hiring decisions on a case-by-case basis. Petition for Review, ¶63.

The General Assembly has neither repealed nor significantly amended the Act's criminal history provisions. The statutory lifetime employment prohibition remains intact as does the Act's differentiation between new applicants and those employed 11 months and 29 days in an Act-covered facility on July 1, 1998, and those who had been employed at an Act-covered facility for 12 months on July 1, 1998.

## Petition for Review

Petitioners are five individuals and a non-profit social service provider. Petition for Review, ¶1. In April 2015, they filed a petition for review in this Court's original jurisdiction challenging the constitutionality of the Act's lifetime employment ban provisions. The individual Petitioners aver that they are all fully qualified for employment in Act-covered facilities. Petition for Review, ¶6. As was the case for the *Nixon* petitioners, they all have convictions for crimes that disqualify them from obtaining employment in Act-covered facilities. Petition

12

for Review, ¶¶8-36.[10]   Resources for Human Development, Inc. (Resources), the other Petitioner, operates facilities for those with mental illness, mental retardation and chemical dependency issues.  Petition for Review, ¶¶37-38.  It hires hundreds of new employees each year.  Petition for Review, ¶38.  Prior to the passage of Chapter 5 of the Act, Resources hired persons with criminal convictions who had rehabilitated themselves and found these persons to be valuable employees.

---

[10] Tyrone Peake, age 52, rode with friends in a stolen vehicle when he was 18 years old.  He was convicted of attempted theft of an automobile and served three years of probation.  This single brush with the law over thirty years ago precludes Peake from obtaining employment in an Act-covered facility.  Petition for Review, ¶¶8-13.

Joan Grey, age 60, has a degree as a Licensed Practical Nurse and over 20 years of caregiving experience.  In 1998, she was convicted of possession of drugs with intent to deliver.  She served a short jail term and completed a drug treatment program, and she has had no further involvement with the criminal justice system.  Because of this 17-year-old conviction, Grey has been rejected for employment by several Act-covered facilities.  Petition for Review, ¶¶14-19.

Charles Ford, age 55, has over 30 years of experience as a cook.  In 1980, when he was 20 years old, Ford was convicted of robbery, attempted theft by unlawful taking, aggravated assault and simple assault all stemming from an altercation at a neighborhood basketball court.  Two years later, he was convicted of disorderly conduct.  Ford struggled with substance abuse issues but has been sober for 24 years.  Because of his 30-year old convictions, Ford has been denied a position in food services in an Act-covered facility.  Petition for Review, ¶¶20-26.

Desmond Lowe, age 48, has experience working in maintenance, cleaning and food services at a nursing home and the Children's Hospital of Philadelphia.  In 1999, when he was 33 years old, he borrowed a car from a friend, was pulled over by police and learned that the car had been stolen.  Fearful that a protracted trial would cause him to miss work and lose his job, Lowe pled guilty to one charge of theft by receiving stolen property.  He was sentenced to two years of probation, which he served, and has had no further trouble with the law.  When Lowe was let go from his latest job at Walmart in 2014, he applied for his former position as a kitchen worker with the nursing home, but was told he could not be hired because of the Act's employment ban.  Petition for Review, ¶¶27-31.

Rudolph Jainlett, age 39, has experience providing elder and child care for family members and friends.  In 1996, he was convicted of writing bad checks; in 1997, he was convicted of auto theft after he borrowed a car from his cousin that turned out to be stolen.  Jainlett served a total of five years' probation for these offenses and had no further legal troubles.  Because of his criminal record from nearly two decades ago, Jainlett cannot obtain employment in an Act-covered facility.  Petition for Review, ¶¶32-36.

Petition for Review, ¶39. Because of the Act's lifetime employment ban, Resources has been forced to refuse employment to qualified job candidates that it wished to hire or to retain as employees. Petition for Review, ¶¶38-39. This employment ban has negatively impacted Resources' ability to provide the best possible services to its clients. Petition for Review, ¶39.

The Petition for Review avers that social science research conducted subsequent to the *Nixon* case shows that the lifetime employment ban is built on a faulty premise because the risk of recidivism declines over time and eventually "loses any meaningful value in predicting future criminal conduct." Petition for Review, ¶61. In 2012, the United States Equal Employment Opportunity Commission (EEOC) issued a guidance policy noting that criminal history employment exclusions have a disparate racial impact and recommending that prospective employers assess employment eligibility by considering the nature of the crime, the time elapsed, and the nature and requirements of the particular job. Petition for Review, ¶62.

Petitioners contend that the Act is unconstitutional as applied to them for the reasons found in *Nixon I* and *Nixon II*. Petition for Review, ¶¶69-70. They also raise a facial constitutional challenge to the lifetime employment ban so as to "avoid the need for continuous piecemeal litigation consisting of numerous as-applied challenges brought by similar groups of aggrieved individuals." Petition for Review, ¶71. They seek a declaration that the lifetime employment ban found in Section 503(a) of the Act, 35 P.S. §10225.503(a), violates several constitutional precepts. First, it violates Article I, Section 1 of the Pennsylvania Constitution[11] by

---

[11] It states:

**(Footnote continued on the next page . . .)**

14

unreasonably and arbitrarily excluding the individual Petitioners and other similarly aggrieved individuals from lawful employment for which they are otherwise qualified. Petition for Review, ¶72. Second, Section 503(a) of the Act violates the right to substantive due process inherent in Article I, Section 1 of the Pennsylvania Constitution by unreasonably and irrebuttably presuming that the individual Petitioners and other similarly aggrieved individuals are unqualified for employment in Act-covered facilities. Petition for Review, ¶73. Third, Section 503(a) of the Act violates the right to equal protection set forth in Article I, Sections 1 and 26 of the Pennsylvania Constitution[12] by unreasonably and arbitrarily precluding the individual Petitioners and similarly aggrieved individuals from lawful employment while allowing other individuals with similar convictions to remain employed, depending solely upon their employment status as of July 1, 1998. Petition for Review, ¶74. Fourth, Section 503(a) of the Act violates the substantive due process rights of Resources by arbitrarily and unreasonably interfering with its right to conduct lawful business and to hire the employees who best serve its clients. Petition for Review, ¶75. The petition for review seeks a

---

**(continued . . .)**

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1.

[12] Article I, Section 26 states:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

PA. CONST. art. I, §26.

permanent injunction against the enforcement of the Act's lifetime employment ban.

On April 16, 2015, Petitioners filed a motion for summary relief asserting that they are entitled to judgment because there are no material facts in dispute and their right to relief is clear.[13] The Commonwealth filed preliminary objections to the petition for review. We address Petitioners' motion and the Commonwealth's preliminary objections together.

## Issues

Petitioners argue that the Act's lifetime employment ban is facially unconstitutional because it violates substantive due process in two ways. First, as established by the Supreme Court in *Nixon II*, the Act's distinction between individuals employed at a single Act-covered facility for a year as of July 1, 1998, and those who are not, is facially irrational and not related to a legitimate state purpose. Second, the ban violates due process by establishing an irrebuttable presumption of unfitness for employment, which has been declared unconstitutional in numerous court decisions. Petitioners also argue that the Act's lifetime employment ban is unconstitutional as applied to them because their situations are factually identical to those of the petitioners in *Nixon*.

---

[13] Petitioners filed their motion for summary relief under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, which states:

> (b)  Summary relief. At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.

PA. R.A.P. 1532(b). The court may grant a motion for summary relief if a party's right to judgment is clear and there are no material issues of fact in dispute. *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008).

16

The Commonwealth responds that Petitioners' facial challenge must fail because they cannot show that the lifetime employment ban is *per se* unconstitutional in every possible application. At a minimum, there exist disputes on the material facts. The Commonwealth also argues that Petitioners cannot sustain their as-applied challenge to the Act because the Department of Aging's Interim Policy provides a mechanism for all persons, including Petitioners, to gain employment in Act-covered facilities.

## Analysis

An act of the General Assembly is presumed to be valid and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012). A party challenging the constitutionality of a statute bears a very heavy burden to overcome this presumption. *Nixon II*, 839 A.2d at 286.[14] There are two types of constitutional challenges, facial and as-applied. *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011).

> A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.

---

[14] A challenge to the constitutionality of a statute presents a pure question of law, over which the court's standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Omar*, 981 A.2d 179, 185 (Pa. 2009). In determining the constitutionality of a law, the courts may not question the propriety of the public policies adopted by the General Assembly for the law. The inquiry is limited to examining the connection between those policies and the law. *Nixon II*, 839 A.2d at 286.

17

*Id.* at 493 (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)).

### a. Standard for Facial Constitutional Challenge

The parties disagree on the proper standard for a facial constitutional challenge. Relying on *Clifton v. Allegheny County*, 969 A.2d 1197 (Pa. 2009), the Commonwealth argues that a statute can be declared facially unconstitutional only if there is no set of circumstances under which the statute would be valid. Petitioners rejoin that "no set of circumstances" is not the correct standard. Rather, they contend a statute is facially unconstitutional if a substantial number of its potential applications are unconstitutional.

At issue in *Clifton* was "the constitutionality of Pennsylvania's property assessment laws." *Clifton*, 969 A.2d at 1200-01. In that context, our Supreme Court considered "the standard by which facial challenges are evaluated, or the facial challenger's corresponding burden of proof." *Id.* at 1222. The Supreme Court began with a review of relevant precedent. For example, in *United States v. Salerno*, 481 U.S. 739 (1987), the U.S. Supreme Court stated that a facial constitutional challenge would succeed only upon a showing that there were no set of circumstances under which the statute would be valid. However, in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008), the U.S. Supreme Court settled on a "plainly legitimate sweep" standard. Under the latter standard, "the challenger need only demonstrate that a 'substantial number' of the challenged statute's potential applications are unconstitutional." *Clifton*, 969 A.2d at 1223 n.36. The Pennsylvania Supreme Court observed in *Clifton* that:

> Even under the "plainly legitimate sweep" standard, a statute is only facially invalid when its invalid applications are so real and substantial that they outweigh the statute's "plainly legitimate sweep." Stated differently, a statute is facially

18

invalid when its constitutional deficiency is so evident that proof of actual unconstitutional applications is unnecessary.

*Clifton*, 969 A.2d at 1223 n.37. Without fixing a standard for all facial constitutional challenges, the Pennsylvania Supreme Court applied the "plainly legitimate sweep" standard and held that the facial challenge raised by the petitioners must fail. *Clifton*, 969 A.2d at 1224.

Because our Supreme Court applied the plainly legitimate sweep standard in *Clifton*, and this is the most recent pronouncement on how to evaluate a facial challenge, we believe it is the appropriate standard. Further, this conclusion is consistent with the Pennsylvania Supreme Court's earlier decision in *Commonwealth v. Ickes*, 873 A.2d 698 (Pa. 2005).

In *Ickes*, the Pennsylvania Supreme Court observed that the "no set of circumstances test" was based on *obiter dicta* from the U.S. Supreme Court's *Salerno* decision and "is not controlling for state courts." *Ickes*, 873 A.2d at 702. Instead, our Supreme Court cited to the "plainly legitimate sweep" test and held that:

> This Court may invalidate a statute for vagueness or for overbreadth *even if it is possible the statute may be applied lawfully in some circumstances*.

*Id*. at 702 (emphasis added). Our Supreme Court explained that this is so because every statute that is unconstitutional by reason of being overbroad is capable of at least one constitutional application.

### b. Lifetime Employment Ban

Having determined that the standard for a facial constitutional challenge is the "plainly legitimate sweep" test, we consider the lifetime employment ban in Section 503(a) of the Act. Petitioners argue that the Act's

lifetime employment ban is facially unconstitutional because it applies only to individuals not employed in an Act-covered facility for at least one year as of July 1, 1998, and establishes an impermissible irrebuttable presumption of unfitness for employment in an Act-covered facility for anyone ever convicted of an enumerated crime. Petitioners assert that these standards violate due process.

Article I of the Pennsylvania Constitution guarantees individuals a wide range of rights, including due process. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Nixon II*, 839 A.2d at 287 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). The General Assembly may, under its police power, limit the rights of the Commonwealth's citizens by enacting laws to protect the public health, safety and welfare, but these limits are subject to judicial review using a substantive due process analysis. *Nixon II*, 839 A.2d at 286. Under this analysis, courts weigh the rights infringed upon by the law against the interest the legislature sought to achieve, and "scrutinize the relationship between the law (the means) and that interest (the end)." *Id*. at 286-87.

In *Nixon II*, the Supreme Court held that Chapter 5 infringed upon the right of individuals to engage in lawful health care occupations, which is a right protected by the due process right established in Article I, Section 1. *Nixon II*, 839 A.2d at 288. However, the right to engage in a particular occupation is not a fundamental right that implicates strict scrutiny; rather, the Court analyzed the constitutionality of Chapter 5 using the "rational basis test." *Id.* Accordingly, the state can lawfully deprive an individual of the ability to work at a particular job so long as the deprivation is reasonably related to the state interest sought to be protected. *Id*.

Due process challenges under the Pennsylvania Constitution are analyzed "more closely" under the rational basis test than due process challenges under the United States Constitution.[15] *Nixon II*, 839 A.2d at 287-88 n.15. In *Gambone v. Commonwealth*, 101 A.2d 634 (Pa. 1957), the Pennsylvania Supreme Court succinctly defined the rational basis test applicable to substantive due process challenges brought under the Pennsylvania Constitution as follows:

> [A] law which purports to be an exercise of the police power *must not be unreasonable, unduly oppressive or patently beyond the necessities of the case*, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests *the legislature may not* arbitrarily interfere with private business or *impose unusual and unnecessary restrictions upon lawful occupations*.

*Gambone*, 101 A.2d at 637 (emphasis added).[16] In *Nixon II*, our Supreme Court reaffirmed that for "substantive due process challenges brought under the Pennsylvania Constitution, the rational basis test is that announced by this Court in *Gambone*." *Nixon II*, 839 A.2d at 277-78 n.15. This means that the legislature can curtail the right to engage in a chosen occupation for an important reason, but it may not do so in a way that is overly broad, *i.e.*, "patently beyond the necessities of the case." *Gambone*, 101 A.2d at 637. As discussed *supra*,

---

[15] In the rational basis test used in equal protection and due process challenges brought under the United States Constitution, "a court must uphold a statute as rational if it can conceive of any plausible reason for the statute." *Nixon II*, 839 A.2d at 287-88 n.15. In those challenges, it matters not whether a statutory classification will have some inequitable results. *Id*.

[16] At issue in *Gambone* was a statute prohibiting the display of any sign larger than twelve inches showing the price of liquid fuel on premises where the fuel was sold or adjacent thereto. The Supreme Court held that the statute was unconstitutional because the size restriction bore no rational relation to protecting the public health, safety, morals or welfare and, therefore, impermissibly infringed on fuel vendors' due process rights.

21

> [a]n overbroad statute violates substantive due process by depriving a person of a constitutionally protected interest through means which are not rationally related to a valid state objective because they "sweep unnecessarily broadly."

*Pennsylvania Medical Society v. Foster*, 608 A.2d 633, 636 (Pa. Cmwlth. 1992) (citing *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 311 A.2d 634, 640 (Pa. 1973)).

Relying on the holding in *Nixon II*, Petitioners argue that the Act's lifetime employment ban does not comport with substantive due process because it applies to certain individuals with a criminal record but not others with the same record, depending on their employment status as of July 1, 1998. This different treatment is not rationally related to the legitimate state purpose of protecting older persons from abuse, neglect and exploitation. Petitioners also challenge the Act's use of an irrebuttable presumption to effect its employment ban.

Statutory irrebuttable presumptions are "created as a means of achieving an end result found desirable by the legislature." *Department of Transportation, Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1063 (Pa. 1996). Irrebuttable presumptions often run afoul of due process protections because they infringe upon protected interests "by utilizing presumptions that the existence of one fact [is] statutorily conclusive of the truth of another fact." *In the Interest of J.B.*, 107 A.3d 1, 14 (Pa. 2014). In *Clayton*, our Supreme Court explained that an irrebuttable presumption is not constitutional where: (1) it encroaches on an interest protected by the due process clause; (2) the presumption is not universally true; and (3) reasonable alternative means exist for ascertaining the presumed fact. *Clayton*, 684 A.2d at 1063.

*Clayton* involved a Department of Transportation regulation that mandated the suspension of a driver's license for a period of one year where the

22

licensee experienced a seizure, regardless of whether that licensee's physician determined the person competent to drive. The Supreme Court concluded that this irrebuttable presumption made the license suspension "a foregone conclusion" and, thus, violated due process. *Id.* at 1065.[17]

In *J.B.*, 107 A.3d 1, the Supreme Court declared unconstitutional a provision of the Sex Offender Registration and Notification Act[18] requiring lifetime registration of juvenile sex offenders. The Court rejected the Act's irrebuttable presumption that juvenile sexual offenders pose a high risk of recidivism, holding that the presumption was not universally true. The Court found a reasonable alternative means of ascertaining the presumed fact that a juvenile offender poses a high risk of recidivism, *i.e.*, an individualized risk assessment. *Id.* at 17-19.[19]

This Court's precedent on employment bans is also instructive. In *Warren County Human Services v. State Civil Service Commission (Roberts)*, 844 A.2d 70 (Pa. Cmwlth. 2004), Warren County dismissed an employee who had a 1980 conviction for aggravated assault, which he had disclosed when he was hired as a caseworker. One year later, his employer realized that it had violated the

---

[17] The Supreme Court explained that a statutory irrebuttable presumption implicates both substantive and procedural due process, stating:

> The presumption, it seems, is the *substance* of the statute or regulation at issue, which presumption necessarily implicates *process* given its conclusiveness.

*Clayton*, 684 A.2d at 1064 (emphasis in original).

[18] 42 Pa. C.S. §§9799.10-9799.41.

[19] In *D.C. v. School District of Philadelphia*, 879 A.2d 408 (Pa. Cmwlth. 2005), this Court declared unconstitutional a provision of the Public School Code of 1949 employing an irrebuttable presumption that students adjudicated delinquent or convicted of certain crimes had to first return to an alternative education setting because they were not fit to immediately return to a regular classroom.

Child Protective Services Law's ban on hiring anyone ever convicted of aggravated assault.[20] The employer discharged the employee notwithstanding his exemplary performance as a caseworker. This Court held that the statute's lifetime ban was unconstitutional because it foreclosed consideration of whether a conviction, remote in time, was determinative of whether a person could act as a child caseworker. This created "limitations that have no temporal proximity to the time of hiring." *Id*. at 74. We advised that:

> At a minimum, the [Child Protective Services Law] should be fine-tuned to provide for specific time limitations for each crime depending on its egregiousness.

*Id*. at 74 n.9.

Finally, this Court considered a lifetime employment ban of individuals convicted of homicide offenses in Section 111(e)(1) of the Public School Code of 1949[21] in *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10 (Pa. Cmwlth. 2012). In *Johnson*, the Allegheny Intermediate Unit hired an employee with a 10-year old felony voluntary manslaughter conviction. At the time of hire, the Public School Code precluded the hiring of persons with a manslaughter conviction less than five years old. In 2011, the legislature amended the Public School Code to make this employment ban of lifetime duration. The Allegheny Intermediate Unit discharged the employee in spite of an exemplary 20-year work record. This Court held that the lifetime employment ban was "unreasonable,

---

[20] 23 Pa. C.S. §6344(c)(2). The employer had relied on an older pre-amendment version of the law which allowed the hiring of someone convicted of aggravated assault more than five years prior to applying for the position.

[21] Act of March 10, 1949, P.L. 30, added by the Act of July 1, 1985, P.L. 129, *as amended*, 24 P.S. §1-111(e)(1). The Public School Code's lifetime employment ban was very similar to the one found in Section 503(a) of the Act at issue in the case *sub judice*.

24

unduly oppressive and patently beyond the necessities of the offense" and "impose[d] unusual and unnecessary restrictions" upon lawful employment and, as such did "not bear a real and substantial relationship to the Commonwealth's interest in protecting children." *Johnson*, 59 A.3d at 25.

In sum, the General Assembly may enact laws that limit an individual's right to pursue a lawful occupation in order to achieve an important government interest, such as protecting school children or older adults from abuse and neglect. However, the means employed to reach the desired end cannot be "unreasonable, unduly oppressive or patently beyond the necessities of the case;" rather, they "must have a real and substantial relation to the objects sought to be attained." *Gambone*, 101 A.2d at 637. *Clayton* and its progeny further teach that a statutory irrebuttable presumption is not an appropriate means because there are reasonable alternative means for ascertaining the presumed fact. An irrebuttable presumption is unnecessarily broad and facially unconstitutional under the "plainly legitimate sweep" standard. *Ickes*, 873 A.2d at 702.

Here, Petitioners do not challenge all of Chapter 5; they do not suggest that they should not be subject to a criminal history check. Petitioners challenge the lifetime employment ban, which encompasses convictions for crimes ranging from murder and rape to misdemeanor theft convictions, and treats all these enumerated crimes the same. As pointed out by Petitioners, Chapter 5 makes no provision for consideration of any other factor, such as the nature of the crime, the facts surrounding the conviction, the time elapsed since the conviction, evidence of the individual's rehabilitation, and the nature and requirements of the job. Employers are stripped of discretion in these respects. The employee's

25

criminal history is the single and overriding factor that a potential employer may consider.

Applying the above-discussed principles, we hold that the Act's lifetime employment ban provision is unconstitutional on its face. As explained by our Supreme Court in *Nixon II*, the means employed by the General Assembly, *i.e.*, a lifetime employment ban at Act-covered facilities for anyone convicted of an enumerated offense at any time, with a grandfather clause for employees with identical convictions employed for one year at a facility as of July 1, 1998, does not bear a real and substantial relation to the stated goal of protecting older adults from "abuse, neglect, exploitation and abandonment." Section 102 of the Act, 35 P.S. §10225.102. There is simply no rational basis to treat those employed for a year in a facility providing services to older adults as of July 1, 1998, as having rehabilitated themselves following their criminal convictions solely because of the amount of time they worked in one facility such that they do not pose a threat to older adults, but treat all other employees and applicants as incapable of rehabilitation and forever a threat to older adults.

Further, the Act's irrebuttable presumption of unfitness for employment is impermissible under *Clayton's* three prong test. First, the lifetime employment ban infringes on an interest protected by the due process clause of the Pennsylvania Constitution. Second, the statutory irrebuttable presumption is not universally true, as evidenced by the fact that the General Assembly has opted to allow certain individuals with criminal records to continue to work in Act-covered facilities, apparently deeming it safe to do so if they were so employed on July 1, 1998. Indeed, it defies logic to suggest that *every* person who has at any time been convicted of any of the crimes listed in Section 503 of the Act, including

26

misdemeanor theft, presents a danger to those in an Act-covered facility. Third, a reasonable alternative means for ascertaining the presumed fact is present in this case. As in *J.B.*, 107 A.3d 1, facilities subject to the Act can perform individualized risk assessments and evaluate applicants with criminal records on a case-by-case basis. Prior to the passage of Chapter 5, Resources did so. Act-covered facilities should not be required to employ a person with a criminal record, but they should have the opportunity to assess the situation and exercise their discretion to employ an applicant found to be sufficiently rehabilitated and a good fit for the job. The Act's lifetime employment ban, like those in *Johnson*, 59 A.3d 10, and *Warren County Human Services*, 844 A.2d 70, violates due process and is therefore unconstitutional.

This Court is mindful of the Supreme Court's pronouncement in *Nixon II* that

> the General Assembly may enact laws that restrict who may work with [older adults and] barring certain convicted criminals from working with these citizens may be an effective means of protecting such citizens from abuse and exploitation.

*Nixon II*, 839 A.2d at 288. However, as we explained in *Warren County Human Services*, 844 A.2d at 74 n.9, the Act must be "fine-tuned" to relate the particular criminal conviction to particular employment. The Act's current blanket prohibition lacks fine-tuning because it treats all the enumerated crimes, regardless of their vintage or severity, as the same even though they present very different risks of employment.

In any case, the lifetime employment ban is unconstitutional as applied to Petitioners. *Nixon I* and *Nixon II* are dispositive. Petitioners all have criminal convictions between 15 and 34 years ago for infractions such as theft,

27

drug possession, writing bad checks, assault and disorderly conduct. Since those convictions, all have had clean criminal records.

The Commonwealth does not argue that the Act's employment ban is constitutional as applied to Petitioners, only that the Commonwealth is not applying the ban to them because it is operating under the Department of Aging's Interim Policy. This policy provides the individual Petitioners a pathway to qualify for employment in Act-covered facilities and allows Resources to make hiring decisions on a case-by-case basis. We reject this argument.

The Interim Policy is irrelevant because it is not legally binding and, in fact, is inconsistent with Chapter 5. At any time it could be abandoned. The Department of Aging lacks the authority to excise the lifetime ban, or parts of it, from Chapter 5. As our Supreme Court has held, "an administrative agency can only exercise those powers which have been conferred upon it by the Legislature in clear and unmistakable language." *Commonwealth, Human Relations Commission v. Transit Casualty Insurance Company*, 387 A.2d 58, 62 (Pa. 1978). Further, an agency is bound by the language of the statute it is charged to enforce; accordingly, the agency's regulations "must be consistent with the statute under which they are promulgated." *Pelton v. Department of Public Welfare*, 523 A.2d 1104, 1107 (Pa. 1987). This is also the case for an agency's statement of policy, which does not have the force of law. *Central Dauphin School District v. Department of Education*, 608 A.2d 576, 581 (Pa. Cmwlth. 1992). Because the Interim Policy is not valid, it does not reduce the risk to employers, such as Resources, that remain exposed to the sanctions in Chapter 5 if they do not follow the dictates in Chapter 5.

The statutory employment ban in the Act is the operative law. It is unconstitutional for the reasons previously discussed.[22]

**Conclusion**

The lifetime employment ban contained in Section 503(a) of the Act, 35 P.S. §10225.503(a), violates due process guaranteed by Article I, Section 1 of the Pennsylvania Constitution because it goes beyond the necessities of the case and is not substantially related to the Act's stated objective of protecting older adults. The statutory ban does not have a plainly legitimate sweep because a substantial number of its applications are invalid, making it unconstitutional on its face. Accordingly, summary relief is granted to Petitioners and the Commonwealth's preliminary objections are overruled.

_____
MARY HANNAH LEAVITT, Judge

---

[22] The Commonwealth argues that Petitioners' motion for summary relief should not be granted because there are material facts in dispute including whether a substantial number of the Act's applications are unconstitutional. We disagree. The constitutionality of the Act's lifetime employment ban is a pure question of law. *Commonwealth v. Omar*, 981 A.2d at 185. The employment ban sweeps unnecessarily broadly and is therefore unconstitutional.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyrone Peake, Joan Grey, Charles Ford, :
Desmond Lowe, Rudolph Jainlett, and :
Resources For Human Development, :
Inc., :
               Petitioners :
                :
           v. : No. 216 M.D. 2015
                :
The Commonwealth of Pennsylvania, :
Department of Human Services of the :
Commonwealth of Pennsylvania, :
Department of Aging of the :
Commonwealth of Pennsylvania, and :
Department of Health of the :
Commonwealth of Pennsylvania, :
             Respondents :

## **O R D E R**

AND NOW, this 30th day of December, 2015, the preliminary objections filed by the Commonwealth of Pennsylvania are OVERRULED and the motion for summary relief filed by Petitioners Tyrone Peake, *et al*., in the above-captioned matter is GRANTED. Section 503(a) of the Older Adults Protective Services Act, 35 P.S. §10225.503(a), is hereby declared unconstitutional and unenforceable, and the Commonwealth is hereby enjoined from enforcing the lifetime employment ban contained therein.

                          _____
                          MARY HANNAH LEAVITT, Judge