FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 AUG 21 AM 8: 42

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHRISTAL FIELDS, | No. 75406-8-I |
| Appellant, | |
| v. | DIVISION ONE |
| STATE OF WASHINGTON DEPARTMENT OF EARLY LEARNING, | UNPUBLISHED OPINION |
| Respondent. | FILED: August 21, 2017 |

LEACH, J. — Christal Fields appeals the superior court's summary judgment dismissal of her constitutional challenge to a Department of Early Learning (DEL) rule imposing on any person convicted of certain crimes a lifetime ban on working in a childcare facility.[1] She contends that this ban disqualifying her as a childcare worker violates her substantive and procedural due process rights. Because the rule has a rational relationship to a legitimate legislative purpose, the protection of children, and DEL provided an adequate review process, we affirm.

## Background

Fields grew up in a dysfunctional home environment with rampant drug abuse. At the age of 16, she became homeless and turned to prostitution and

---

[1] WAC 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(1), -0120(1).

drugs. In 1988, Fields attempted to snatch a purse to help pay for her drug habit. She pleaded guilty to attempted second degree robbery.[2]

Fields continued to lead a troubled life until 2006 when she turned her life around by successfully completing a drug program. She has been clean and sober ever since. For two years she resided in group housing. During this time, she was promoted to resident manager because of her responsibility and commitment to working with others. Many support letters from employers and coworkers since then attest to Fields's character.

On February 6, 2013, Fields submitted a portable background check to DEL. Based on the information Fields provided, DEL cleared Fields to work at a childcare facility. She worked in that childcare facility for six months after she received her background clearance. Fields loves working with children and has taken advantage of every available training opportunity to improve her skills.

A local news report on childcare centers brought Fields's undisclosed criminal history to DEL's attention. DEL later sent Fields a letter disqualifying her from unsupervised contact with childcare children. This disqualification prevented Fields from being on the premises of a licensed facility during the hours it is licensed to provide childcare.[3]

---

[2] The superior court in this case recognized that the second degree attempted robbery "barely met perhaps the statutory elements of robbery in the second degree at the time."

[3] WAC 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(5).

Fields appealed DEL's action. Citing her conviction for attempted second degree robbery, DEL moved to dismiss her appeal on summary judgment. Fields contested the summary judgment. She claimed that the lifetime ban was unconstitutional facially and as applied to her circumstances. The administrative law judge (ALJ) had no authority to decide and thus did not consider these constitutional issues. He found that Fields's robbery conviction disqualified her.

WAC 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 imposes a lifetime ban on persons working in childcare if they were convicted of any of 50 listed crimes, including second degree robbery. Because Fields did not dispute her conviction, this rule precludes her from working in her chosen field.

Fields moved for an internal appeal. The reviewing judge affirmed the ALJ's determination that constitutional challenges had to be brought in the superior court.

Fields next sought review in the superior court. She asserted that WAC 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 violated her constitutional due process protections because it deprived her of the opportunity to explain the conviction and submit evidence of her rehabilitation, character references, and other information showing her qualifications to continue in her chosen profession. The superior court held that despite potential compelling facts in Fields's favor, the rule did not violate Fields's due process rights because a rational relationship existed between a legitimate

No. 75406-8-I / 4

state interest and the rule.

Fields appeals.

Analysis

The Washington Administrative Procedure Act (WAPA)[4] governs judicial review of agency actions.[5] The validity of an administrative agency rule presents a question of law, which this court reviews de novo.[6] A court presumes the validity of a duly adopted rule. Thus, the party challenging a rule has a heavy

---

[4] Ch. 34.05 RCW.

[5] RCW 34.05.570(3) provides,

(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;

(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;

(c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

(f) The agency has not decided all issues requiring resolution by the agency;

(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;

(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or

(i) The order is arbitrary or capricious.

[6] Kabbae v. Dep't of Soc. & Health Servs., 144 Wn. App. 432, 439, 192 P.3d 903 (2008).

-4-

burden of proving the rule's unconstitutionality. Because constitutional issues fall outside the realm of agency expertise, this court does not defer to an agency's application of constitutional principles.[7] An individual is entitled to relief if this court determines that "[t]he order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied."[8]

Both the United States Constitution and the Washington Constitution provide that no person may be deprived of life, liberty, or property without due process of law.[9] While they use nearly identical language to provide these rights, our Supreme Court has held that interpretation of the federal due process clause does not control our analysis of the state due process clause.[10] Whether the state due process clause provides greater protection than the federal due process clause depends on the particular context in which a litigant asserts a due process violation.[11]

Fields makes no claim that the state due process clause provides broader protection than the federal due process clause in the context of her circumstances and has not offered a Gunwall[12] analysis advocating such a

---

[7] Crescent Convalescent Ctr. v. Dep't of Soc. & Health Servs., 87 Wn. App. 353, 357, 942 P.2d 981 (1997).

[8] RCW 34.05.570(3)(a).

[9] U.S. CONST. amend. V, XIV, § 1; WASH. CONST. art. I, § 3.

[10] Bellevue Sch. Dist. v. E.S., 171 Wn.2d 695, 710-11, 257 P.3d 570 (2011).

[11] E.S., 171 Wn.2d at 710-11.

[12] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

position. In the absence of a <u>Gunwall</u> analysis, "we cannot consider an argument that the Washington Constitution provides greater protection than its federal counterpart."[13] Therefore, we analyze Fields's claims under only the federal due process clause.

The due process clause of the Fourteenth Amendment confers both procedural and substantive due process rights. A substantive challenge involves an individual's right to be free from arbitrary action of the government.[14] A procedural challenge questions whether the government has given an individual enough notice and the chance to be heard.

We first consider Fields's substantive due process claims. To prevail on a substantive due process claim, Fields must identify a property or liberty interest and show that state action arbitrarily and capriciously deprived her of that right.[15] The level of review a court applies to a substantive due process challenge depends on the nature of the right involved.[16]

---

[13] <u>Centimark Corp. v. Dep't of Labor & Indus.</u>, 129 Wn. App. 368, 375, 119 P.3d 865 (2005).

[14] <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

[15] <u>Amunrud v. Bd. of Appeals</u>, 158 Wn.2d 208, 218-19, 143 P.3d 571 (2006).

[16] <u>Amunrud</u>, 158 Wn.2d at 219.

The right to pursue an occupation or profession is a protected liberty interest.[17] Thus, Fields has established a liberty interest and that DEL's challenged rule deprived her of that interest. Because the right to pursue a particular occupation is not a fundamental right, courts use a rational basis test to review state actions affecting it.[18] This means that Fields must show that no rational relationship exists between the DEL rule and a legitimate state interest.[19]

A party may make either a facial or an as applied challenge to state action. To prevail on a facial challenge, a party must show that "no set of circumstances exists in which the statute, as currently written, can be constitutionally applied."[20] To prevail on an as applied challenge, an individual must prove that an otherwise valid statute is unconstitutional as applied to that individual.[21]

---

[17] See Barry v. Barchi, 443 U.S. 55, 64 n.11, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979 (licenses issued to horse trainers were protected by due process and equal protection); Conn v. Gabbert, 526 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999) ("Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment"); Dittman v. California, 191 F.3d 1020, 1029 (9th Cir. 1999) (pursuit of a profession or occupation is a protected liberty interest that extends across a broad range of lawful occupations).

[18] Amunrud, 158 Wn.2d at 222.

[19] Amunrud, 158 Wn.2d at 222.

[20] City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004).

[21] Moore, 151 Wn.2d at 668-69.

Fields has failed to show that no rational basis exists for the challenged DEL rule or, alternatively, that as applied to her particular circumstances no rational basis exists.

The legislature created DEL in 2006[22] to "safeguard and promote the health, safety, and well-being of children receiving child care and early learning assistance, which is paramount over the right of any person to provide care."[23] DEL administers childcare and early learning programs and adopts minimum licensing requirements.[24] Division Three of this court has upheld DEL's rulemaking authority.[25]

DEL adopted rules governing the licensing of childcare in Washington. WAC 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(1) states that an "[i]ndividual who has a background containing any of the permanent convictions on the director's list, WAC 170-067-0120(1), will be permanently disqualified from providing licensed child care, caring for children or having unsupervised access to children receiving early learning services." "Disqualified" means that "DEL has determined that a person's background information prevents that person from being licensed or certified by DEL or from being authorized by DEL to care for or have

---

[22] LAWS OF 2006, ch. 265, § 101; see ch. 43.215 RCW.
[23] RCW 43.215.005(4)(c).
[24] RCW 43.215.020(2)(d).
[25] Stewart v. Dep't of Soc. & Health Servs., 162 Wn. App. 266, 272, 252 P.3d 920 (2011).

unsupervised access to children receiving early learning services."[26]   An

attempted second degree robbery conviction permanently disqualifies a person.[27]

At oral argument, DEL claimed that a federal statute requires the bans

contained in its rule as a condition of receiving federal monies.   States that

receive funds from the federal government for childcare services must establish

requirements for and conduct criminal background checks of childcare staff

members.[28]   But the controlling federal statute identifies only nine crimes that

make a childcare staff member ineligible for employment.   Robbery is not one of

those crimes.   But this statute does permit states to disqualify individuals for

other crimes.   42 U.S.C. § 9858f(h)(1) provides,

> Nothing in this section shall be construed to prevent a State from
> disqualifying individuals as child care staff members based on their
> conviction for crimes not specifically listed in this section that bear
> upon the fitness of an individual to provide care for and have
> responsibility for the safety and well-being of children.

(Emphasis added.)   Thus, federal law allows DEL to include other crimes if they

bear on the individual's fitness to provide care.   Support for DEL's decision to

include second degree robbery in the 50 enumerated crimes can be found in

RCW 43.43.830(7) which states,

---

[26] WAC 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.
[27] WAC 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(1)(c) ("Convictions whose titles are preceded with the word 'attempted' are given the same weight as those titles without the word 'attempted.'").
[28] 42 U.S.C. § 9858f(a)(1).

"Crime against children or other persons" means a conviction of any of the following offenses: Aggravated murder; first or second degree murder; first or second degree kidnapping; first, second, or third degree assault; first, second, or third degree assault of a child; first, second, or third degree rape; first, second, or third degree rape of a child; first or second degree robbery; first degree arson; first degree burglary; first or second degree manslaughter; first or second degree extortion; indecent liberties; incest; vehicular homicide; first degree promoting prostitution; communication with a minor; unlawful imprisonment; simple assault; sexual exploitation of minors; first or second degree criminal mistreatment; endangerment with a controlled substance; child abuse or neglect as defined in RCW 26.44.020; first or second degree custodial interference; first or second degree custodial sexual misconduct; malicious harassment; first, second, or third degree child molestation; first or second degree sexual misconduct with a minor; commercial sexual abuse of a minor; child abandonment; promoting pornography; selling or distributing erotic material to a minor; custodial assault; violation of child abuse restraining order; child buying or selling; prostitution; felony indecent exposure; criminal abandonment; or any of these crimes as they may be renamed in the future.

(Emphasis added.)

A statute is facially unconstitutional only when no set of circumstances exists where the statute would be valid.[29] When a statute, or as here, a rule, has "'a plainly legitimate sweep,'" a facial challenge necessarily fails.[30] Under the plainly legitimate sweep standard, a statute is only facially invalid when its invalid applications are so real and substantial that they outweigh the statute's plainly

---

[29] Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)).

[30] Wash. State Grange, 552 U.S. at 449 (quoting Washington v. Glucksberg, 521 U.S. 702, 739-40 & n.7, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (Stevens, J., concurring)).

legitimate sweep. In other words, a statute is facially invalid when its constitutional deficiency is so evident that proof of actual unconstitutional applications is unnecessary. "Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'"[31]

Fields asks us to follow a Pennsylvania case, Peake v. Pennsylvania.[32] In Peake, a Pennsylvania court found unconstitutional a provision imposing a lifetime ban for individuals convicted of certain listed offenses from working in care of older adults. The court stated, "Irrebuttable presumptions often run afoul of due process protections because they infringe upon protected interests 'by utilizing presumptions that the existence of one fact [is] statutorily conclusive of the truth of another fact.'"[33] But Peake applied the Pennsylvania Constitution, not the United States Constitution. The court noted, "Due process challenges under the Pennsylvania Constitution are analyzed 'more closely' under the rational basis test than due process challenges under the United State Constitution."[34]

---

[31] Wash. State Grange, 552 U.S. at 450 (quoting Sabri v. United States, 541 U.S. 600, 609, 124 S. Ct. 1941, 158 L. Ed. 2d 891 (2004)).

[32] 132 A.3d 506 (2015).

[33] Peake, 132 A.3d at 519 (alteration in original) (quoting In the Interest of J.B., 107 A.3d 1, 14 (2014)).

[34] Peake, 132 A.3d at 518.

Thus, we do not find that analysis appropriate here. Particularly because, as previously noted, Fields makes no claim that the Washington Constitution, like Pennsylvania's, provides greater protection than does the Fourteenth Amendment of the United States Constitution.[35]

DEL cites to the United States Supreme Court's decision in Weinberger v. Salfi[36] as support for its rule's irrebuttable presumption. There, the Supreme Court upheld a Social Security regulation prohibiting anyone married within nine months of a Social Security recipient's death from receiving survivor benefits.[37] But Weinberger addressed a benefit conferred by statute and not, as here, a constitutionally protected liberty interest.

In Re Kindschi[38] provides more helpful guidance. There, a medical disciplinary board suspended a physician from medical practice for eight months after the medical disciplinary board found him guilty of unprofessional conduct.[39] The legislature established this board and gave it broad powers to discipline medical professionals for unprofessional conduct.[40] The physician had pleaded

---

[35] In re Pers. Restraint of Dyer, 143 Wn.2d 384, 394, 20 P.3d 907 (2001) ("Washington's due process clause does not afford a broader due process protection than the Fourteenth Amendment."); Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wn.2d 418, 422, 511 P.2d 1002 (1973).

[36] 422 U.S. 749, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975).

[37] Weinberger, 422 U.S. at 767-85.

[38] 52 Wn.2d 8, 319 P.2d 824 (1958).

[39] Kindschi, 52 Wn.2d at 9.

[40] Kindschi, 52 Wn.2d at 9.

guilty to tax evasion.[41] The statutory definition of "unprofessional conduct" included conviction in any court for an offense involving moral turpitude.[42]

Initially, the medical board gave Kindschi notice that it would hold a hearing. That notice told Kindschi that his conviction for tax evasion involved moral turpitude and thus constituted unprofessional conduct. Kindschi admitted that he pleaded guilty to tax evasion but denied that his behavior involved moral turpitude or unprofessional conduct.[43] At the start of the hearing, the board chair told Kindschi that the attorney general had opined that tax evasion involved moral turpitude. This settled the question for the board, which foreclosed Kindschi from presenting any evidence about the circumstances of his conviction.[44] Like Fields, Kindschi sought to introduce evidence that would explain the particular circumstances behind his crime.

Kindschi sought judicial review. Our Supreme Court affirmed the board,[45] reasoning that the daily practice of medicine concerned life and death consequences for the general public who had the right to expect the highest degree of trustworthiness from the medical profession. The court found a rational connection existed between the fraud involved in tax evasion and the

---

[41] Kindschi, 52 Wn.2d at 13.
[42] Kindschi, 52 Wn.2d at 9.
[43] Kindschi, 52 Wn.2d at 10.
[44] Kindschi, 52 Wn.2d at 10.
[45] Kindschi, 52 Wn.2d at 13.

fitness of one to practice medicine.[46] Similarly, here, a rational connection exists between a violent crime conviction and the safety of children in childcare.

In regulating childcare licensing, Washington State recognizes the paramount interest to protect children and that "'[t]o safeguard and promote the health, safety, and well-being of children receiving child care and early learning assistance . . . is paramount over the right of any person to provide care.'"[47]

Fields argues that even if we were to find the rule satisfied due process, it does not do so as applied to her. An "as applied" constitutional challenge to a statute differs from a facial constitutional attack. A facial challenge asserts that a statute is unconstitutional based solely on the text of the challenged provision. An as applied challenge makes no claim that a statute is unconstitutional as written, but that when applied to an individual under circumstances particular to the individual, the provision violates that individual's constitutional right.

Fields challenges the merits of a rule that includes the crime with which she was convicted without providing her an opportunity to explain her circumstances. A "challenge, however meritorious, which is directed to the wisdom of the statute will not justify a court in finding it unconstitutional."[48]

---

[46] Kindschi, 52 Wn.2d at 12.

[47] Hardee v. Dep't of Soc. & Health Servs., 172 Wn.2d 1, 12, 256 P.3d 339 (2011) (alterations in original) (quoting RCW 43.215.005(4)(c)).

[48] State v. Smith, 93 Wn.2d 329, 337, 610 P.2d 869 (1980) (citing Wash. State Sch. Dirs. Ass'n v. Dep't of Labor & Indus., 82 Wn.2d 367, 378, 510 P.2d 818 (1973)).

We must consider other factors besides Fields's private interest in childcare work in our due process analysis.[49] The State has an important interest in protecting the safety of small children in state licensed childcare facilities.[50] Fields's liberty interest in childcare work is subordinate to this interest.[51] Requiring an opportunity for a fact-finding hearing for each applicant convicted of a violent crime against a child or other person could result in costly investigations, more hearings, more litigation about injured children, and increased monitoring of licensees.[52] Fields has failed to meet her heavy burden of establishing beyond question the absence of a rational relationship between the application of the challenged rule to her and the State's interest in protecting small children receiving childcare.

Fields also challenges the procedural fairness of the rule. Procedural due process imposes a limit on governmental action that deprives a person of "liberty" or "property interests" within the meaning of a constitution's due process clause.[53] To prevail on a procedural due process challenge, an individual must show that one has been denied the opportunity to be heard "'at a meaningful time

---

[49] Islam v. Dep't of Early Learning, 157 Wn. App. 600, 612-13, 238 P.3d 74 (2010).

[50] Islam, 157 Wn. App. at 613.

[51] Islam, 157 Wn. App. at 613.

[52] Islam, 157 Wn. App. at 611.

[53] Mathews v. Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

and in a meaningful manner.'"[54] The United States Supreme Court established that a court must consider three distinct factors to determine whether a review process passes constitutional muster: (1) the private interest affected, (2) the risk that the procedures will erroneously deprive a party of that interest and (3) the government's interest, including the potential burden of additional procedures.[55]

Specifically, Fields claims DEL denied her a meaningful opportunity to have her position heard. But Fields, as a disqualified person, requested and received an administrative hearing and reconsideration of the decision at the hearing. Moreover, the WAPA provided her a forum in the superior court to argue her position on the constitutionality of the rule.[56] She has been provided with a sufficient opportunity to be heard.

Fields's complaint about the lack of an opportunity to present mitigating circumstances about her conviction and her subsequent rehabilitation goes to the substance of DEL's rule, which we have addressed as a substantive due process claim.

---

[54] Mathews, 424 U.S. at 335 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).
[55] City of Bellevue v. Lee, 166 Wn.2d 581, 585-86, 210 P.3d 1011 (2009) (citing Mathews, 424 U.S. at 335).
[56] Amunrud, 158 Wn.2d at 217.

## Conclusion

A rational relationship exists between DEL's rule banning individuals convicted of certain violent crimes against children and other persons from ever providing childcare in a state licensed facility and the State's interest in protecting the safety of children receiving care in those facilities. This rational relationship exists in the application of the rule to Fields. Also, Fields received a fair hearing on the issue of her disqualification. For these reasons we affirm the decisions of the office of administrative hearings and the superior court.

_Leach, J._

WE CONCUR:

_Dwyer, J._                     _Becker, J._