# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Megraw,                  :

          Appellant         :

                               :

           v.                     :   No. 577 C.D. 2017

                               :   ARGUED:  March 6, 2018

School District of Cheltenham    :

Township                             :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED:  May 1, 2018

Appellant Patrick Megraw (Mr. Megraw) appeals from two orders issued on April 13, 2017 by the Court of Common Pleas of Montgomery County (Trial Court) in his action against his former employer, Appellee School District of Cheltenham Township (School District).  In this suit, he requested injunctive relief and sought a declaratory judicial determination that Section 111(f.1)(1) of the Public School Code of 1949 (Code), 24 P.S. § 1-111(f.1)(1),[1] which became effective in September 2011,

---

[1]      If a report of criminal history record information or a form submitted by an employe under subsection (j) indicates the person has been convicted of an offense graded as a felony offense of the first, second or third degree other than one of the offenses enumerated under subsection (e), the person shall be eligible for continued or prospective employment only if a period of ten years has elapsed from the date of expiration of the sentence for the offense.

Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 30, 2011, P.L. 112.

and which mandates a 10-year employment ban for individuals convicted of certain classes of felonies, was unconstitutional as applied to him. One order denied Mr. Megraw's Motion for Summary Judgment, as well as his Supplemental Motion for Summary Judgment, while the second granted the School District's "Supplemental Motion for Summary Judgment."[2] We conclude that, as applied, this statute violates Mr. Megraw's substantive due process rights and therefore reverse the Trial Court.

In March 1995, the School District hired Mr. Megraw as a groundskeeper and eventually promoted him to the level of foreman. Megraw Dep., 5/2/16 at 5. Mr. Megraw voluntarily resigned from the foreman position in 2010 and returned to his former groundskeeper position, in connection with repeatedly being admonished by his superiors for excessive absences from and lateness to work. Megraw Dep., 2/10/17 at 10. Mr. Megraw claimed these issues stemmed from his responsibilities as sole caretaker for his mother, who had been terminally ill with lung cancer and died in September 2012, as well as his own health issues. Megraw Dep., 5/2/16 at 5; Megraw Dep., 2/10/17 at 9-10. However, Mr. Megraw's overall problematic disciplinary history with the School District dated back to at least March 2006 and extended through August 2015. *See* David Dep., 2/10/17 at 7-21 (deposition testimony from Lynn David, the School District's Director of Human Resources). During this time, Mr. Megraw was suspended twice and reprimanded on multiple occasions, both verbally and in writing, due to overuse of leave time, tardiness, poor performance, and sleeping at his work station. *See* Synopsis of Patrick Megraw Documented Discipline and Unsatisfactory Work Documentation at 1-2. Yet, despite these ongoing disciplinary problems, the School District did not fire Mr.

---

[2] The School District gave its Motion this name, despite the fact that it constituted the School District's initial (and only) request for summary judgment. Tr. Ct. Op. at 5 n.6.

Megraw and never considered this pattern of behavior serious enough to warrant termination of his employment. *See* David Dep., 5/2/16 at 12.

The School District's handling of Mr. Megraw took a marked turn when, on January 12, 2016, it fired Mr. Megraw after learning that he had been convicted of a felony in June 2009, for violating former Section 6111(g)(4) of the Uniform Firearms Act (UFA), 18 Pa. C.S. § 6111(g)(4),[3] by knowingly and intentionally providing false information while attempting to purchase a firearm. The genesis of this conviction occurred in 2007, when Mr. Megraw's then-wife filed for divorce. Megraw Dep., 2/10/17 at 18. Mr. Megraw refused to leave their home and, as a result, his soon-to-be-former spouse obtained a Protection from Abuse Order (PFAO), which forced Mr. Megraw to leave the marital residence. *Id.* at 18-19. Afterwards, the relationship between Mr. Megraw and his ex-wife improved, to the point where they would occasionally have meals together, and he would visit her home to see their children, attend occasional parties, and help with maintenance issues. *Id.* at 15-16. At some point during this time period, Mr. Megraw's former spouse allegedly advised him that the PFAO had been dissolved. Megraw Dep., 5/2/16 at 15.

In May 2008, Mr. Megraw went to a Dick's Sporting Goods store in Plymouth Meeting, Pennsylvania, to purchase a .22-caliber rifle. *Id.* at 14. Mr. Megraw filled

---

[3] As of May 2008, this statute contained the following language:
> Any person, purchaser or transferee who in connection with the purchase, delivery or transfer of a firearm under this chapter knowingly and intentionally makes any materially false oral or written statement or willfully furnishes or exhibits any false identification intended or likely to deceive the seller, licensed dealer or licensed manufacturer commits a felony of the third degree.

Former Section 6111(g)(4) of the UFA, 18 Pa. C.S. § 6111(g)(4), *amended by* Section 6 of the Act of October 17, 2008, P.L. 1628.

3

out the required rifle purchase application form as part of the instant background check process. On this form he stated that he was not subject to any currently outstanding PFAOs. *Id.* The store clerk submitted the form and then told Mr. Megraw he was not eligible to purchase the weapon. The clerk advised Mr. Megraw that the explanation as to why his application was denied would be mailed to him at a later date. *Id.* Thereafter, in December 2008, Mr. Megraw was arrested and charged with one count of violating 18 Pa. C.S. § 4904[4] and one count of violating 18 Pa. C.S. § 6111(g)(4). *Id.* at 17-18. On June 25, 2009, Mr. Megraw pled guilty to the latter, which is a third-degree felony offense. *Id.* at 17-18; Complaint at 2.[5] Mr. Megraw was sentenced to four years' probation, which he completed without incident. Tr. Ct. Op. at 2.

At the time of his conviction in 2009, there was no law that required Mr. Megraw to report his conviction to the School District and, thus, he did not do so. This changed in June 2011, when the General Assembly enacted Section 111(f.1)(1) of the Code, to bar any individual who had been convicted of a first, second, or third-degree felony, of a type not otherwise subjecting him to any other type of ban under the Code, from continued employment by a school in this Commonwealth, unless at least 10 years had elapsed from the end of the individual's sentence.[6]

---

[4] Section 4904 of the Crimes Code classifies certain categories of unsworn false statements as second- or third-degree misdemeanors. 18 Pa. C.S. § 4904.

[5] The Commonwealth dropped the charge relating to unsworn falsifications as part of Mr. Megraw's plea agreement. *See* Megraw Dep., 5/2/16 at 19.

[6] Section 111 of the Code also mandates bans of varying lengths for certain, enumerated types of felony and misdemeanor convictions, as well as in response to convictions for which the crime has been graded as a first-degree misdemeanor. *See* 24 P.S § 1-111(e)(1), (f.1)(2)-(3).

Subsequently, the General Assembly again amended the Code, mandating that all current school employees submit their state and federal criminal history records to their employers no later than December 31, 2015, so that the relevant school administrator could review each submission and determine whether additional action should be taken. *See* 24 P.S. § 1-111(c.3), added by Act of February 16, 2016, P.L. 6. Mr. Megraw provided the School District with the required information by this deadline. Shortly thereafter, on January 12, 2016, the School District terminated Mr. Megraw due to his June 2009 felony conviction. David Dep., 5/2/16 at 7-12.

In February 2016, Mr. Megraw filed suit against the School District, requesting a declaratory finding that 24 P.S. § 1-111(f.1)(1) violated his substantive due process rights under Article I, Section 1 of the Pennsylvania Constitution, as applied to him.[7] Thereafter, Mr. Megraw filed his Motion for Summary Judgment, which the Trial Court denied on November 7, 2016. The next day, November 8, 2016, the Trial Court vacated this ruling and issued a new order, which required the parties to take discovery and/or enter into a stipulation of facts regarding the following outstanding relevant factual issues discussed in *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 24-25 (Pa. Cmwlth. 2012):

> 1. Whether [Mr. Megraw's] underlying criminal offense affected his ability to perform his job duties as a groundskeeper;

---

[7] Mr. Megraw also sought a permanent injunction to prohibit the School District from firing him "solely based upon the [felony] conviction." Complaint at 2, 5-7. As the Trial Court noted, though Mr. Megraw initially sought injunctive relief, he had already been fired by the time he filed suit, and never subsequently offered any additional argument in support of his request for a permanent injunction. Therefore, he effectively abandoned that portion of his suit against the School District and focused solely on obtaining a declaratory judgment in his favor. *See* Tr. Ct. Op. at 4 n.4.

2. How the 2009 conviction reflects upon [Mr. Megraw's] present abilities to perform his duties with the [S]chool [D]istrict;
3. [Mr. Megraw's] job performance from 1995 to the present;
4. The reason why [Mr. Megraw's] criminal conviction in 2009 is predictive of future behavior and continues to warrant the harsh result of the ten[-]year ban of employment with the [S]chool [D]istrict;
5. The rational reason that applying a ten[-]year ban of employment serves a legitimate governmental purpose to be protected.

Tr. Ct. Order, 11/8/16 at 1.

On March 10, 2017, both parties filed Supplemental Motions for Summary Judgment. On March 27, 2017, the Trial Court held oral argument regarding these motions. On April 13, 2017, the Trial Court issued two orders, one granting the School District's Supplemental Motion, and the other denying both Mr. Megraw's initial Motion for Summary Judgment, as well as his Supplemental Motion, prompting this appeal to our Court.

## Standard of Review

When ruling upon a motion for summary judgment, the trial court must resolve all doubts against the movant, examining the case record in the light most favorable to the non-moving party, and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). Our standard of review on appeal regarding a trial court's granting of such a motion is limited to determining whether that decision constituted an abuse of discretion or an error of law. *Salerno v. LaBarr*, 632 A.2d 1002, 1003 (Pa. Cmwlth. 1993).

**Issues**

On appeal, Mr. Megraw makes the following claims, which we have paraphrased and condensed for clarity. First, 24 P.S § 1-111(f.1)(1)'s employment ban and its irrebuttable presumption regarding felony convictions violate Mr. Megraw's substantive due process rights, and are thus facially unconstitutional. Megraw's Br. at 14-30. Second, the ban and irrebuttable presumption are also unconstitutional as-applied, on substantive due process grounds, because his criminal behavior occurred nearly eight years before his termination and the School District did not establish that Mr. Megraw's decision to provide false information in 2008 has, or will have, any effect upon his ability to carry out his groundskeeping duties or rendered him a threat to school safety. *Id.* at 30-38. Third, the Trial Court abused its discretion by factoring Mr. Megraw's employment history and evidence regarding the employment-ban-related guidance documents issued by the Commonwealth's Department of Education into its rulings upon the parties' various motions, when his 2009 felony conviction was the exclusive reason for the School District's decision to terminate him. *Id.* at 38-45. Finally, the Trial Court abused its discretion by determining that Mr. Megraw's repeated assertions that he had believed his ex-wife had dropped the PFAO constituted dishonesty, and that his termination was warranted as a result of this dishonesty.[8] *Id.* at 45-46.

_____

[8] The Pennsylvania State Education Association ("PSEA") also submitted an *amicus curiae* brief in support of Mr. Megraw. Therein, PSEA makes essentially the same arguments as Mr. Megraw did in his brief, except that PSEA also opines that Section 111(f.1)(1) is unconstitutional as applied to Mr. Megraw, due to its retroactive application in his situation (*i.e.*, Mr. Megraw pled guilty to knowingly and intentionally providing false information on his rifle purchase application at a point in time when the law did not mandate his firing consequent to the conviction). Since Mr. Megraw did not raise this issue himself, we cannot consider it for purposes of this appeal. *See Banfield v. Cortes*, 110 A.3d 155, 172 n.14 (Pa. 2015) ("[A]*micus* briefs cannot raise issues not set forth by the parties.").

7

## Discussion

### A. Mr. Megraw Has Waived His Challenge to the Facial Constitutionality of Section 111(f.1)(1) of the Code

Preliminarily, we must note that Mr. Megraw has waived his argument that Section 111(f.1)(1) is facially unconstitutional for a number of reasons. First, Mr. Megraw failed to raise or preserve this issue at the trial level, and *explicitly* stated that he was making an as-applied challenge. *See* Complaint at 2, 5-7; Megraw Motion for Summary Judgment at 1-2, 8; Megraw Supplemental Motion for Summary Judgment at 6; Concise Statement of Errors Complained of in The Appeal Of The Orders Of Court Dated April 13, 2017 at 1-3; Pa. R.A.P. 302(a); Pa. R.A.P. 1925(b)(4)(vii). Additionally, Mr. Megraw failed to notify the Commonwealth's Attorney General of his intent to mount a facial attack upon Section 111(f.1)(1), and in fact expressly disclaimed such a desire via a February 25, 2016 letter to then-Attorney General Kathleen Kane. School District's Br., App.; *see Kepple v. Fairman Drilling Co.*, 615 A.2d 1298, 1303 (Pa. 1992) (citing Pa. R.C.P. No. 235 and Pa. R.A.P. 521) (party waives ability to mount facial challenge to constitutionality of statute if it fails to notify Attorney General of its intent to do so). Finally, Mr. Megraw's attorney informed our Court during the course of oral argument that the facial challenge had been waived.

Given that Mr. Megraw's remaining issues pertain to his as-applied constitutional challenge, his arguments about the irrebuttable presumption contained in Section 111(f.1)(1) are no longer relevant. Pennsylvania law is clear that we need only analyze the constitutionality of such irrebuttable presumptions in cases where the facial constitutionality of a law has been properly challenged. *Compare Johnson*, 59 A.3d at 15-16, 20-25 (as-applied constitutional challenge, with no discussion of

8

irrebuttable presumption test), *with Peake v. Commonwealth*, 132 A.3d 506, 516-22 (Pa. Cmwlth. 2015) (facial constitutionality challenge, with discussion and application of irrebuttable presumption test). Therefore, we need not address whether this irrebuttable presumption comports with the due process requirements of the Pennsylvania Constitution.

**B.     Section 111(f.1)(1) of the Code, As Applied to Mr. Megraw, Violated His Substantive Due Process Rights**

Mr. Megraw bases his claim that Section 111(f.1)(1)'s 10-year employment ban, as applied to him, violated his substantive due process rights upon Article I, Section 1 of the Pennsylvania Constitution.[9]

Pennsylvania jurisprudence has consistently interpreted the language of this section as "guarantee[ing] an individual's right to engage in any of the common occupations of life." *Johnson*, 59 A.3d at 21 (citations omitted). However, this right is not "fundamental" in nature, and any law that allegedly impinges upon it is thus subject to a rational basis test.[10] *Nixon v. Commonwealth*, 839 A.2d 277, 287-88 & n.15 (Pa. 2003).[11]

---

[9] Article I, Section 1 of the Pennsylvania Constitution states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

[10] The parties do not dispute that the rational basis test applies.

[11]     Although the due process guarantees provided by the Pennsylvania Constitution are substantially coextensive with those provided by the Fourteenth Amendment, a more restrictive rational basis test is applied under the Pennsylvania Constitution. *See* [*Pa. State Bd. of Pharmacy v. Pastor*, 272 A.2d 487, 490–91 (Pa. 1971)] (explaining that Pennsylvania courts have analyzed due process challenges under rational basis tests "more closely" than the United States Supreme Court). Needless to say, under the rational basis test

9

For a law to be deemed constitutional under the rational basis test, it "must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained." *Gambone v. Commonwealth*, 101 A.2d 634, 637 (Pa. 1954). While a state may regulate a business which affects the public health, safety and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected." *Sec'y of Revenue v. John's Vending Corp.*, 309 A.2d 358, 361 (Pa. 1973).

Here, the challenged statute, Section 111(f.1)(1), applies to all school employees who have any form of direct contact with children, and establishes a 10-year ban for those who have been convicted of a first, second, or third-degree felony.[12] This statute is unambiguous and does not permit any discretion on the part of the employer to consider additional information, such as the affected employee's employment history, professional reputation, or the details of his personal life. This law does not require that any nexus exist between the nature of criminal behavior and the job responsibilities. If an employee's conviction fits within the statute's parameters, a school is required to terminate that employee.

Although *Johnson* dealt with a separate section of the Code, interestingly, both parties primarily rely on our Court's holding in *Johnson* to support their

---

applied under our Constitution, deference is still given to the General Assembly in that laws are presumed constitutional and the General Assembly therefore does not need to present evidence to sustain their constitutionality. *See O'Donnell v. Casey* [405 A.2d 1006, 1009-10 (Pa. Cmwlth. 1979)].

*Nixon*, 839 A.2d at 288 n.15.

[12] Mr. Megraw never argued that, as part of his job with the School District, he had no such contact with children.

10

respective positions. *See* Megraw's Br. at 31-33; School District's Br. at 17-24. In *Johnson*, Johnson's employer, Allegheny Intermediate Unit (AIU), terminated him due to a nearly 30-year-old conviction for felony voluntary manslaughter, which subjected him to a lifetime employment ban under Section 111(e)(1) of the Code. *Johnson*, 59 A.3d at 13-15. Johnson filed suit against AIU, seeking declaratory and injunctive relief. *Id.* at 15. The trial court issued a permanent injunction, reasoning that the amended law was *ex post facto* in nature and, thus, unconstitutional as applied to Johnson. *Id.* at 16. On appeal by the Commonwealth's Department of Education, we affirmed on different grounds, finding that, while this was not an *ex post facto* law, it did violate Johnson's substantive due process rights as applied, since:

> AIU . . . [had] failed to present any rational reason that applying the lifetime ban to Johnson served a legitimate governmental purpose . . . [and because the statute] create[d] a lifetime ban for a homicide offense that ha[d] no temporal proximity to Johnson's present ability to perform the duties of his position, and it [did] not bear a real and substantial relationship to the Commonwealth's interest in protecting children[.]

*Id.* at 17-25.

*Johnson* is part of a larger corpus of case law, dating back to 1973, in which our appellate courts have validated both facial and as-applied substantive due process challenges to statutory employment bans and other similar laws predicated upon prior convictions.

In *John's Vending*, the Cigarette Tax Board learned that a shareholder and former president of John's Vending had been convicted in the 1950s of a crime of moral turpitude. 309 A.2d at 360. Consequently, the Board revoked a wholesale cigarette dealer license held by John's Vending, based upon violations of Section

11

403 of the Cigarette Tax Act,[13] which established a bar to holding a license where an individual or corporate officer had been convicted of such a crime, and required any applicant for such a license to disclose any convictions to the Board as part of the application process. *Id.* at 360-61. This ban was not explicitly lifelong, but the statutory language effectively made it such, since the ban was conditioned upon a conviction and was not expressly limited in duration. *Id.* at 360-62.

We affirmed the Board, but our Supreme Court reversed us and vacated the Board's decision, finding that there was no reasonable relationship between the ban and the governmental interest sought to be protected. Specifically, the Supreme Court held:

> [t]o interpret Section 403(2) [of the Cigarette Tax Act] as a blanket prohibition barring anyone who has been convicted of a crime of moral turpitude without regard to the remoteness of those convictions or the individual's subsequent performance would be unreasonable. We cannot assume that the legislature intended such an absurd and harsh result.

*Id.* at 362.

In *Nixon*, several affected employees and a nonprofit corporation challenged the constitutionality of a statutory employment ban contained in the Older Adults Protective Services Act (OAPSA).[14] 839 A.2d at 279-83. This law, covering employment in the field of elder care, required new applicants and those employees who had been on the job for less than a year to submit criminal background check information, mandating that anyone whose information showed he had been convicted of an enumerated crime be barred for life from working in that field. *Id.* at 280-82. Our Supreme Court ultimately held that there was no "real and substantial

---

[13] Act of July 22, 1970, P.L. 513, *formerly* 72 P.S. § 3169.403, repealed by Section 5 of the Act of December 21, 1981, P.L. 482, 72 P.S. § 8297.

[14] Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §§ 10225.101-10225.5102.

relationship" between the carve-out for employees with more than a year's tenure and "the Commonwealth's interest in protecting the elderly, disabled, and infirm from victimization[.]" *Id.* at 289-90. Therefore, this ban impermissibly infringed upon the employees' substantive due process rights and was unconstitutional as applied to them. *Id.* at 289.

In *Warren County Human Services v. State Civil Service Commission (Roberts)*, 844 A.2d 70 (Pa. Cmwlth. 2004), Roberts was hired by Warren County to be a caseworker, but was terminated shortly thereafter, pursuant to a lifetime employment ban mandated by the Child Protective Services Law (CPSL), 23 Pa. C.S. §§ 6301-6386, when his employer learned he had been convicted in 1980 of aggravated assault. *Warren*, 844 A.2d at 71-72. He appealed this decision to the State Civil Service Commission, which found in his favor and

> declined to apply the life-time criminal history ban in Section 6344(c) of the CPSL because it found that it violated Article I, Section 1 of the Pennsylvania Constitution by providing "a per se life-time prohibition to employment without considering the individual's present or past ability . . . to perform the duties of the position."
> . . . Because Warren County's removal of Roberts was based solely on the CPSL, the Commission reversed Warren County's decision to terminate Roberts for failing to present evidence establishing just cause for Roberts' removal.

*Id.* at 72.

Warren County appealed this decision, and we affirmed the Commission for two reasons: First, "the CPSL fails to satisfy the rational basis test. Section 6344(c) prohibits the hiring of applicants previously convicted of certain enumerated crimes; however, it does not ban existing employees from continuing to work in the child-care field, despite having a similar conviction." *Id.* at 74. Second,

13

> the CPSL's lifetime ban of previously convicted applicants from employment in child-care is unconstitutional [because it] . . . 'runs afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders.' *John's Vending*, . . . 309 A.2d at 362. . . . Because Section 6344(c), as it relates to aggravated assault, creates limitations that have no temporal proximity to the time of hiring, it does not bear a real and substantial relationship to the Commonwealth's interest in protecting children[.]

*Id.*

In two related cases, *Croll v. Harrisburg School District*, (Pa. Cmwlth., No. 210 M.D. 2012, filed December 13, 2012), 2012 WL 8668130, and *Jones v. Penn Delco School District*, (Pa. Cmwlth., No. 294 M.D. 2012, filed December 13, 2012), 2012 WL 8668277,[15] a bus driver, a school custodian, and a teacher challenged the as-applied constitutionality of lifetime employment bans imposed upon them due to previous convictions for decades-old convictions and the requirements of the Code. *Croll*, slip op. at 1-8, 2012 WL 8668130 at *1-*2; *Jones*, slip op. at 1-7, 2012 WL 8668277 at *1-*2. The Commonwealth's Department of Education intervened in these matters, successfully petitioned to have them transferred to our Court, and then filed preliminary objections to each lawsuit, which we overruled as to plaintiffs' substantive due process claims. *Croll*, slip op. at 9-20, 2012 WL 8668130 at *2-*7; *Jones*, slip op. at 8-19, 2012 WL 8668277 at *2-*7. In each case, we found that the statutory lifetime employment ban "has no temporal proximity to [the plaintiffs'] present ability to perform the duties of [their jobs], and . . . does not bear a real and substantial relationship to the Commonwealth's interest in protecting children,

---

[15] *See* Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a) (unreported Commonwealth Court opinions issued after January 15, 2008 may be cited for their persuasive value).

14

[meaning] it is unreasonable, unduly oppressive and patently beyond the necessities of the offense." *Croll*, slip op. at 20, 2012 WL 8668130 at *7; *Jones*, slip op. at 19, 2012 WL 8668277 at *7. On that basis, we held that, as applied, the Code's lifetime bans were "unconstitutional as violative of [plaintiffs'] substantive due process rights as guaranteed by Article 1, Section 1 of the Pennsylvania Constitution." *Croll*, slip op. at 20, 2012 WL 8668130 at *7; *Jones*, 2012 WL 8668277 at *7, slip op. at 19.

Finally, in *Peake*, five individuals and a non-profit social services agency challenged the same OAPSA lifetime employment ban that had been addressed in *Nixon*, arguing that the ban was both unconstitutional on a facial basis and as applied to them. 132 A.3d at 509. We found in favor of these petitioners, ruling that the statute was facially unconstitutional for two reasons: First, it included a grandfather clause exempting those who had been employed in elder care positions as of July 1, 1998, but no such exemption for those whose employment started later. *Id.* at 521. Second, the ban was based upon an irrebuttable presumption that was impermissible under the three-prong test articulated by our Supreme Court in *Department of Transportation, Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060 (Pa. 1996). *Peake*, 132 A.3d at 521-22.

In making this determination in *Peake*, we reasoned that:

> [OAPSA]-covered facilities should not be required to employ a person with a criminal record, but they should have the opportunity to assess the situation and exercise their discretion to employ an applicant found to be sufficiently rehabilitated and a good fit for the job . . . [OAPSA] must be "fine-tuned" to relate the particular criminal conviction to particular employment. [OAPSA's] current blanket prohibition lacks fine-tuning because it treats all the enumerated crimes, regardless of their vintage or severity, as the same even though they present very different risks of employment.

15

*Id.* at 522.[16]

The nature of the statute challenged in *Johnson*, as well as these other cases, can be distinguished from Section 111(f.1)(1), in that those other statutes imposed lifelong bans, rather than an employment ban of a **fixed** duration, like the statute in the instant matter. In that regard, the instant appeal presents a matter of first impression, namely, whether a time-limited employment ban resulting from a criminal conviction violates an individual's substantive due process rights under the Pennsylvania Constitution. However, the right affected by Section 111(f.1)(1), namely employment in one's desired field, as well as the predication of this statute's employment ban upon previous convictions, are not so distinguishable. Thus, while the particulars of this matter are unique, these cases still serve to define the contours of our analysis.

The above-cited case law reveals the inherent tension which exists between general principles of statutory interpretation and how our appellate courts have applied the rational basis test, in the context of statutory employment bans predicated upon previous criminal convictions. The General Assembly has declared "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(b). In addition, it is well-settled that:

> [o]ur law provides a strong presumption that legislative enactments . . . do not violate our Constitution. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) . . . A party that challenges the constitutionality of

---

[16] We also held that the statute was unconstitutional as applied, noting that all of the petitioners' convictions were 15 to 34 years old and that their criminal records had been clean ever since their long-ago convictions. *Peake*, 132 A.3d at 522.

16

a statute bears "a very heavy burden of persuasion" to overcome this presumption. *Id.* "Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Id.* (Emphasis in original.) (Citations omitted).

*Barrel of Monkeys, LLC v. Allegheny Cty.*, 39 A.3d 559, 563–64 (Pa. Cmwlth. 2012).

Even so, our Supreme Court has held:

[i]n order to avoid an absurd and harsh result, a court may look beyond the strict letter of the law to interpret a statute according to its reason and spirit and accomplish the object intended by the Legislature. To interpret [a law as mandating] . . . a blanket prohibition barring anyone who has been convicted of a crime . . . without regard to the remoteness of those convictions or the individual's subsequent performance would be unreasonable.

*John's Vending*, 309 A.2d at 362 (citations omitted). Consequently, as shown by the aforementioned cases, such statutory employment bans have been repeatedly deemed facially unconstitutional, or unconstitutional as-applied on substantive due process grounds, either because the challenged statute itself does not permit contemplation of such evidence and sweeps too broadly, or the evidence in a specific situation does not establish a reasonable basis for imposing a severe sanction like the loss of one's job.

Applying this precedent to the instant manner, as stated earlier, Mr. Megraw asserts that the challenged 10-year employment ban, as applied to him, violated his substantive due process rights because there is no correlation or evidence that his 2009 conviction impacts his current or prospective ability to properly perform his groundskeeping duties. Megraw's Br. at 30-38. Mr. Megraw further alleges that the Trial Court erred in considering his prior disciplinary history since the School District's **sole** witness specifically admitted that Mr. Megraw's 2009 felony

conviction was the **only** reason Mr. Megraw was fired. *Id.* at 38-45. Finally, Mr. Megraw argues that the Trial Court also abused its discretion by determining that Mr. Megraw's termination was warranted, because Mr. Megraw's repeated assertions that he had believed his ex-wife had dropped the PFAO showed him to be a dishonest person. *Id.* at 45-46.

The School District counters Mr. Megraw's claims of as-applied unconstitutionality by arguing the statute does not impose a lifetime ban, meaning his case is thus distinguishable from *Johnson*. School District's Br. at 17-18. It next opines the gap in time between Mr. Megraw's criminal activity and his subsequent termination (7 years, 8 months) is far closer than those in *Johnson* (30 years). *Id.* Third, the School District raises concerns about Mr. Megraw's 2009 conviction, and his subsequent disavowals that he was guilty. The School District asserts that because Mr. Megraw has backtracked on his admissions in his guilty plea, this renders him too untrustworthy to carry out his groundskeeping duties, and implicates the School District's interest in having honest employees. *Id.* at 18-20. Finally, the School District maintains that Mr. Megraw's post-conviction disciplinary record shows that his conviction was part, and predictive, of a larger pattern of bad behavior. *Id.* at 20-21.

However, these responses by the School District fail to establish a rational basis for applying Section 111(f.1)(1)'s 10-year ban to Mr. Megraw by virtue of his 2009 conviction.

While both a statutory employment ban's duration and the length of time between conviction and sanction are important elements of an inquiry into such a ban's constitutionality, the law does not permit these factors to be assessed in a mechanical fashion to determine whether a ban passes muster. Both the 10-year ban,

18

as well as the 7-year, 8-month gap between the activity which gave rise to Mr. Megraw's criminal conviction and his subsequent firing, represent significant lengths of time, which must be treated as such when assessing the ban's as-applied constitutionality. *See Ake v. Bureau of Professional and Occupational Affairs*, 974 A.2d 514, 520 (Pa. Cmwlth. 2009) ("[T]he nature of the offending conduct and its remoteness in time must be considered where an agency seeks to revoke a professional license on the basis of a conviction. . . . [S]even years [between the offending conduct and license revocation] is a substantial interval of time.").

As it relates to "dishonesty," the School District, like any employer, clearly has a vested interest in ensuring its employees are honest. However, a fired employee's untruthfulness can only supply the rational basis for applying a statutory employment ban where the dissembling has, or has had, a tangible and direct effect upon his job performance. *See John's Vending*, 309 A.2d at 362 (an individual's convictions for crimes of moral turpitude cannot justify license revocation, where the convictions do not implicate his "present ability to properly discharge the responsibilities required by [his] position."; *id*. at 19-20 (general interest in employees' character and moral fitness does not create rational basis for statutorily mandated firing). Here, it would take a significant leap of logic, in support of which the School District offers no evidence, to affirmatively link Mr. Megraw's decision to disavow his guilty plea with his ability to diligently, faithfully, and honestly mow lawns and trim bushes at the School District's behest.

Nor does Mr. Megraw's prior history of disciplinary issues create a suitable justification for imposing the 10-year ban upon him. Indeed, Ms. Lynn David, the School District's Director of Human Resources and the School District's **only** witness presented via her prior deposition testimony, specifically testified that Mr.

19

Megraw was fired solely because Section 111(f.1)(1) required such action by the School District due to his felony conviction and agreed that, were it not for this law, the School District would not have terminated Mr. Megraw:[17]

> [MR. HERRING] [Mr. Megraw's attorney]: Okay. And now that you learned that he has this F -- I'm going to call it F3 -- F3 related to the firearm, what do you then do?
> [MS. DAVID]: Contact counsel.
> [MR. HERRING]: Okay. And don't tell me what counsel said. But as a result of your contact with counsel, we can agree that a decision was made to terminate Mr. Megraw?
> [MS. DAVID]: Correct.
> [MR. HERRING]: Okay. And the termination decision was based on the fact that he had the F3 conviction in his background?
> [MS. DAVID]: Correct --
> [MR. HERRING]: Okay.
> [MS. DAVID]: -- as it relates to that law.
> [MR. HERRING]: As it relates to the changes in the School Code?
> [MS. DAVID]: Correct.
> [MR. HERRING]: And the changes in the School Code create a bar of employment for anyone that has an F3 conviction?
> [MS. DAVID]: It has a span of time during which, after the conviction, the individual may not be employed by the School District…
> [MR. HERRING]: [T]he School Code requires as written that there's a bar of employment for ten years after that, correct, as you read it?
> [MS. DAVID]: I would not rely on my reading of it.
> [MR. HERRING]: How about counsel's?
> [MS. DAVID]: Yes. I would rely on counsel's reading of it.
> [MR. HERRING]: And that's why the termination took place, because the bar had not ended?

---

[17] It is important to note that, pursuant to Section 111(g) of the Code, the School District faced the threat of civil penalties if it did not fire Mr. Megraw upon learning of his felony conviction, as required by Section 111(f.1)(1).

[MS. DAVID]: Correct.

[MR. HERRING]: And we can agree, but for the conviction and the bar, the School District would not have terminated Mr. Megraw? But for the conviction and the bar, there would not have been a termination action?

[MS. DAVID]: Not at that time, no.

[MR. HERRING]: Correct, or as we sit here today, there was no intent to terminate him for any reason at that time?

[MS. DAVID]: Correct.

David Dep., 5/2/16 at 9-12.

Thus, the School District cannot defend the constitutionality of Mr. Megraw's termination by referring to prior deficiencies in his employment history that would not have otherwise resulted in the loss of his job. *See Johnson*, 59 A.3d at 24-25 (employer's admission that employee would not have been fired absent statutorily mandated employment ban shows "that his [temporally] remote conviction does not reflect upon his present abilities to perform the duties of his position.").

Finally, to support its decision to terminate Mr. Megraw, the School District maintains that Mr. Megraw's post-conviction disciplinary record shows that his conviction was part, and predictive, of a larger pattern of bad behavior. Even if we were to disregard the fact that the School District offered no evidence whatsoever to support such a bald and broad assertion, this argument also fails for the same reason that Mr. Megraw's prior disciplinary record is not a relevant consideration.

Therefore, as the School District has failed to articulate any rational basis for how imposing the 10-year employment ban upon Mr. Megraw furthers a legitimate governmental interest, we hold that Section 111(f.1)(1), as applied, violated Mr. Megraw's substantive due process rights under Article I, Section 1 of the Pennsylvania Constitution. Accordingly, we reverse the Trial Court's orders

21

denying summary judgment to Mr. Megraw and granting summary judgment in favor of the School District.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Patrick Megraw, | : |
| Appellant | : |
| | : |
| v. | : No. 577 C.D. 2017 |
| | : |
| School District of Cheltenham | : |
| Township | : |

# O R D E R

AND NOW, this 1st day of May, 2018, the orders of the Court of Common Pleas of Montgomery County, dated April 13, 2017, are hereby REVERSED.

_____
ELLEN CEISLER, Judge